Nicole D. Klobas
[*Pro Hac Vice Motion Forthcoming*]
Arizona Department of Water Resources
1110 West Washington Street, Suite 310
Phoenix, Arizona 85007
(602) 771-8477
ndklobas@azwater.gov

Jeffrey B. Wall
[*Pro Hac Vice Motion Forthcoming*]
Morgan R. Ratner
[*Pro Hac Vice Motion Forthcoming*]
Gibson, Dunn & Crutcher LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500
jwall@gibsondunn.com
mratner@gibsondunn.com

Gregg J. Costa
[*Pro Hac Vice Motion Forthcoming*]
Gibson, Dunn & Crutcher LLP
811 Main Street, Suite 3000
Houston, Texas 77002
(346) 718-6600
gcosta@gibsondunn.com

Mark A. Hutchison (Bar No. 4639)
Hutchison & Steffen, PLLC
10080 W. Alta Drive, Suite 200
Las Vegas, Nevada 89145
(702) 385-2500
mhutchison@hutchlegal.com

Joseph C. Reynolds (Bar No. 8630)
Hutchison & Steffen, PLLC
100 W. Liberty Street, Suite 765
Reno, Nevada 89501
(775) 853-8746
jreynolds@hutchlegal.com

Yaira Dubin
[*Pro Hac Vice Motion Forthcoming*]
Parisa Sadeghi
[*Pro Hac Vice Motion Forthcoming*]
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000
ydubin@gibsondunn.com
psadeghi@gibsondunn.com

Stephen J. Hammer
[*Pro Hac Vice Motion Forthcoming*]
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
(214) 698-3100
shammer@gibsondunn.com

*Attorneys for Plaintiff-Intervenor*
*State of Arizona*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

STATE OF NEVADA, COLORADO RIVER COMMISSION OF NEVADA, and SOUTHERN NEVADA WATER AUTHORITY,

Plaintiffs,

v.

DOUGLAS BURGUM, Secretary of the Interior, in his official capacity as Secretary of

Case No. 26-cv-2665

**MOTION TO INTERVENE OF THE STATE OF ARIZONA AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

the Department of the Interior; U.S. Department of the Interior; U.S. Bureau of Reclamation; and AUBREY BETTENCOURT, in her official capacity exercising the delegated authority of the Commissioner of the U.S. Bureau of Reclamation,

Defendants.

## TABLE OF CONTENTS

Page


Table of Authorities ..... ii

Memorandum of Points and Authorities ..... 1

Background ..... 2

A. The Law of the River ..... 2

B. The Challenged Agency Actions ..... 4

C. Nevada's Lawsuit ..... 7

Argument ..... 7

I. Arizona is entitled to intervene as of right. ..... 8

A. Arizona's motion is timely. ..... 8

B. Arizona has a significant protectable interest in this action. ..... 9

C. Disposition of this action may impair Arizona's ability to protect its interests. ..... 10

D. Representation of Arizona's interests by the existing parties may be inadequate. ..... 11

II. Alternatively, this Court should grant Arizona permissive intervention. ..... 13

A. Arizona satisfies the requirements for permissive intervention. ..... 13

B. Discretionary factors weigh in favor of intervention. ..... 14

Conclusion ..... 14

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Arizona* v. *California*,
376 U.S. 340 (1964) ... 9

*Arizona* v. *California*,
547 U.S. 150 (2006) ... 10

*Beckman Indus., Inc.* v. *Int'l Ins. Co.*,
966 F.2d 470 (9th Cir. 1992) ... 13

*California Trout, Inc.* v. *U.S. Bureau of Reclamation*,
115 F. Supp. 3d 1102 (C.D. Cal. 2015) ... 10

*California* v. *United States*,
180 F.2d 596 (9th Cir. 1950) ... 11

*Citizens for Balanced Use* v. *Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ... 8, 9, 11, 12

*Hoopa Valley Tribe* v. *U.S. Bureau of Reclamation*,
648 F. Supp. 3d 1196 (E.D. Cal. 2022) ... 9

*Kalbers* v. *U.S. Dep't of Just.*,
22 F.4th 816 (9th Cir. 2021) ... 8, 9

*MGM Grand Hotel, Inc.* v. *Smith-Hemion Prods., Inc.*,
158 F.R.D. 677 (D. Nev. 1994) ... 14

*Nevada Ass'n of Cntys.* v. *U.S. Dep't of the Interior*,
2014 WL 1338736 (D. Nev. Apr. 2, 2014) ... 9, 10, 11

*Texas* v. *New Mexico*,
602 U.S. 943 (2024) ... 9

*Tonkawa Tribe of Indians of Okla.* v. *Scientific Games Corp.*,
2021 WL 3847802 (D. Nev. Aug. 27, 2021) ... 14

*Trbovich* v. *United Mine Workers of Am.*,
404 U.S. 528 (1972) ... 11

*United States* v. *Blue Lake Power, LLC*,
215 F. Supp. 3d 838 (N.D. Cal. 2016) ... 8

*United States* v. *City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002) ... 8

*United States* v. *Oregon*,
839 F.2d 635 (9th Cir. 1988) ... 12

*United States* v. *Stringfellow*,
783 F.2d 821 (9th Cir. 1986) ... 11

*Venegas* v. *Skaggs*, 867 F.2d 527 (9th Cir. 1989)....13, 14

*W. Watersheds Project* v. *Haaland*, 22 F.4th 828 (9th Cir. 2022)....13

*Wilderness Soc'y* v. *U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011)....8, 9, 10

**Compacts, Treaties, and Statutes**

1922 Colorado River Compact....1, 3

1944 U.S.-Mexico Water Treaty....3

Colorado River Storage Project Act of 1956, ch. 203, § 1, 70 Stat. 105....3

Ariz. Rev. Stat. § 45-105....1

5 U.S.C. § 702....10

43 U.S.C. § 617....3

43 U.S.C. § 617*l*....3

43 U.S.C. § 620m....3, 9

43 U.S.C. § 1552....3, 4

**Regulations**

35 Fed. Reg. 8,951 (June 10, 1970)....4

73 Fed. Reg. 19,873 (Apr. 11, 2008)....4

87 Fed. Reg. 37,884 (June 24, 2022)....5

91 Fed. Reg. 2,131 (Jan. 16, 2026)....5

91 Fed. Reg. 48,385 (July 31, 2026)....5

**Rules**

Federal Rule of Civil Procedure 24....1, 2, 8, 10, 13

**Other Authorities**

Bureau of Reclamation, *Post-2026 Operational Guidelines and Strategies for Lake Powell and Lake Mead, Final Environmental Impact Statement* (July 2026)....1

Bureau of Reclamation, *Record of Decision—Decision Framework for Colorado River Guidelines: Coordinated Operations of Lake Powell and Lake Mead (2027–2036)* (Aug. 2026)....1

Bureau of Reclamation, *Colorado River Basin Water Supply and Demand Study—Executive Summary* (Dec. 2012) .......... 2

Bureau of Reclamation, *Colorado River Guidelines for Coordinated Operations of Lake Powell and Lake Mead, Operating Years 2027 and 2028* (Aug. 2026) .......... 1

The State of Arizona, acting through the Director of the Arizona Department of Water Resources, respectfully submits this motion to intervene as plaintiff in the above-captioned case, pursuant to Federal Rule of Civil Procedure 24, and to file the complaint in intervention attached as Exhibit 2. The existing parties to this case have reserved their position on this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

The Colorado River is the lifeblood of the American Southwest. The River's precious waters are shared by the seven States of the Colorado River Basin—Arizona, California, Colorado, Nevada, New Mexico, Utah, and Wyoming—under a robust body of law that is anchored by a seven-State agreement known as the 1922 Colorado River Compact. The Compact and the laws that followed it constrain the federal government, too. The federal government must observe those laws when operating the federal dams and reservoirs on the Colorado River.

Recently, the Department of the Interior and the Bureau of Reclamation issued three agency actions that will govern the agencies' release of water from federal dams and reservoirs for the next decade.[1] If upheld, these actions would significantly reduce the supply of water available to the three States of the Lower Basin—Arizona, California, and Nevada—in violation of the 1922 Compact and related laws. Nevada brought this Administrative Procedure Act suit to challenge those agency actions and to protect its rights under the federal laws governing the Colorado River. Those same challenged actions affect Arizona at least as much as Nevada. Acting through the Director of the Arizona Department of Water Resources, *see* Ariz. Rev. Stat. § 45-105(A)(9), Arizona therefore moves to intervene and participate in the resolution of these critical issues.

This Court should grant the motion to intervene. Arizona has an undeniable and significant interest in this case. The State's towns, cities, tribes, farmers, factories, and businesses cannot survive without sufficient water from the Colorado River. And Reclamation's decisions about how to

[1] *See* Bureau of Reclamation, *Post-2026 Operational Guidelines and Strategies for Lake Powell and Lake Mead, Final Environmental Impact Statement* (July 2026); Bureau of Reclamation, *Record of Decision—Decision Framework for Colorado River Guidelines: Coordinated Operations of Lake Powell and Lake Mead (2027–2036)* (Aug. 2026); Bureau of Reclamation, *Colorado River Guidelines for Coordinated Operations of Lake Powell and Lake Mead, Operating Years 2027 and 2028* (Aug. 2026).

administer the federal reservoirs along the River over the next ten years will directly affect how much of that water Arizonans can use. This Court should permit Arizona to participate as a plaintiff in this suit and to challenge Reclamation's actions under the APA.

Arizona easily satisfies the requirements for intervention as of right under Rule 24(a)(2). First, its motion is timely, filed less than two months after Nevada's complaint and before any responsive pleadings have been filed. Second, as one of the three States in the Lower Basin of the Colorado River, it has an indisputable interest in the life-sustaining subject matter of this case. Third, its ability to protect that interest may be impaired by the disposition of this action, which may affect future operations of the Colorado River and determine the federal government's obligations surrounding the River. And fourth, its interests are not adequately represented by the existing plaintiffs. Although Arizona and Nevada both seek to ensure that the challenged actions comply with existing law, their interests and proposed remedies do not overlap completely. One sovereign party to a seven-State compact cannot fully represent the interests of the other six.

Even if the Court disagrees with Arizona on any of those points, it should grant permissive intervention under Rule 24(b). Arizona challenges the same three agency actions, presses similar claims, and makes many of the same arguments as Nevada. It also brings a critical perspective, and its interests are at least as affected as Nevada's. Efficiency and judicial economy thus greatly favor intervention. If Arizona is not permitted to intervene, that will create a risk of duplicative suits and conflicting decisions about the same set of agency actions.

## BACKGROUND

### A. The Law of the River

The Colorado River supplies water to approximately 40 million people across seven States. *See* Bureau of Reclamation, *Colorado River Basin Water Supply and Demand Study—Executive Summary* 3 (Dec. 2012). The River is divided into an Upper Basin, principally comprising Colorado, New Mexico, Utah, and Wyoming, and a Lower Basin, principally comprising Arizona, California, and Nevada. Ex. A to Ariz. Compl. (Final EIS (July 2026)) at ES-2.

The Colorado River Compact of 1922 and subsequent federal statutes and agreements—collectively known as the "Law of the River"—govern the allocation and administration of the River.

The Compact allocates the waters of the Colorado River between the Upper Basin and the Lower Basin, to forestall a "race to the water" under the traditional prior-appropriation doctrine. *See* 1922 Compact, art. III(a)-(b). The Compact then establishes the Upper Basin's minimum delivery obligation to the Lower Basin: The Upper Basin must deliver 75 million acre-feet of water to the Lower Basin at Lee Ferry, the dividing point between the two Basins, on a rolling ten-year basis. *Id.*, art. III(d). The Compact further imposes on the Upper Basin an additional delivery obligation to satisfy its share of the United States' treaty obligation to Mexico, which requires the Upper Basin to deliver at minimum another 7.5 million acre-feet to Lee Ferry over ten years. *Id.*, art. III(c); *see* 1944 U.S.-Mexico Water Treaty, § III, art. 10(a). Together, those provisions require the Upper Basin to deliver at least 82.5 million acre-feet at Lee Ferry over any ten-year period. For decades, Arizona has depended on the Upper Basin's satisfaction of that delivery obligation to meet its water needs.

Since the enactment of the 1922 Compact, Congress has repeatedly made the Upper Basin's delivery obligation binding on the federal agencies that manage the Colorado River. The 1928 Boulder Canyon Project Act ratified the 1922 Compact. Critically, the Act makes the "rights of the United States" in the River "subject to and controlled by" the 1922 Compact. 43 U.S.C. § 617*l*(b). It also authorized construction of what is now Hoover Dam, which impounds Lake Mead, a reservoir in the Lower Basin. *Id.* § 617.

In 1956, Congress enacted the Colorado River Storage Project Act. That Act authorized the construction of four major reservoirs in the Upper Basin (collectively, the Initial Storage Units)—the Aspinall Unit (formerly the Curecanti Unit), Flaming Gorge, Navajo, and Glen Canyon, which impounds Lake Powell. Colorado River Storage Project Act of 1956, ch. 203, § 1, 70 Stat. 105, 106 (codified at 43 U.S.C. § 620 *et seq.*). It likewise directs the federal government "to comply with the applicable provisions of the Colorado River Compact" in its "storage and release of water from reservoirs in the Colorado River Basin." 43 U.S.C. § 620m.

Finally, the Colorado River Basin Project Act of 1968 directs the Secretary of the Interior to establish criteria for the "coordinated long-range operation of the [Initial Storage Units]," "[i]n order to comply with . . . the Colorado River Compact." 43 U.S.C. § 1552(a). And it instructs that in establishing the operating criteria, the federal government must "make provision for . . . releases of

water from Lake Powell" in a specific "order of priority": (1) releases necessary to satisfy the Upper Basin's delivery obligation to Mexico; (2) releases necessary to satisfy the Upper Basin's delivery obligation to the Lower Basin; and (3) "storage of water not required for the releases." *Ibid.* The Secretary implemented that directive in 1970 by promulgating the Long-Range Operating Criteria. *See* Coordinated Long-Range Operation, 35 Fed. Reg. 8,951-52 (June 10, 1970). The Long-Range Operating Criteria govern the release of water from Lake Powell (*i.e.*, at the Glen Canyon Dam) to Lake Mead (*i.e.*, at the Hoover Dam). Because Lake Powell sits upstream from Lee Ferry and Lake Mead sits downstream from it, the Upper Basin's ability to deliver a Compact-compliant volume of water at Lee Ferry hinges in part on the federal government releasing sufficient water from Lake Powell to Lake Mead. The Long-Range Operating Criteria thus establish an objective of maintaining a minimum annual release of 8.23 million acre-feet from Lake Powell and contemplate greater releases in some years. 35 Fed. Reg. 8,951, § II(2)-(3).

In sum, each time Congress has legislated about the federal government's role in Colorado River operations, it has made Compact compliance a governing constraint.

**B. The Challenged Agency Actions**

In recent years, the States and federal government have contended with severe drought conditions in the Colorado River Basin. The decades since 2000 are estimated to be "the second driest period of record" in the Basin. Ex. C to Ariz. Compl. (Lower Division States Scoping Letter (Aug. 15, 2023)) at 1. In 2007, Reclamation promulgated a set of guidelines for operating Lake Powell and Lake Mead in these drought conditions. *See Colorado River Interim Guidelines for Lower Basin Shortages and Coordinated Operations for Lake Powell and Lake Mead*, adopted by Record of Decision in December 2007, 73 Fed. Reg. 19,873 (Apr. 11, 2008) (2007 Guidelines). In most operating conditions, the 2007 Guidelines require an annual release of at least 8.23 million acre-feet from Lake Powell, with greater releases when storage conditions permit. *See id.* § 6. These guidelines govern operations through the end of 2026. *See id.* Part II; *id.* § 8.A, C.

In 2022, in anticipation of the 2007 Guidelines' expiration, Reclamation began developing a new framework for post-2026 operations of Lake Powell and Lake Mead. Reclamation solicited pre-scoping input before formally initiating review under the National Environmental Policy Act (NEPA).

Gibson, Dunn & Crutcher LLP

*See* 87 Fed. Reg. 37,884 (June 24, 2022). Throughout the process, Arizona emphasized that the new framework must comply with the Law of the River. It joined the other Lower Basin States in urging Reclamation that "the Law of the River must be the foundation for the Post-2026 Operations." Ex. C to Ariz. Compl. at 2. The Lower Basin States also proposed their own alternative framework for reservoir operations "to minimize risk of noncompliance with the 1922 Compact." Ex. H to Ariz. Compl. (Lower Basin Alternative (Mar. 6, 2024)) at 4.

In January 2026, Reclamation issued a Draft Environmental Impact Statement (Draft EIS), which identified the frameworks Reclamation was considering to replace the expiring guidelines. Ex. D to Ariz. Compl. (Draft EIS (Jan. 2026)); *see* 91 Fed. Reg. 2,131 (Jan. 16, 2026) (notice of availability). Arizona again objected, explaining that each of the proposed alternatives assumed that the Upper Basin States "have no duty to comply with their delivery obligations and would make no meaningful reductions in usage," and would thus "require[ ] the Lower Basin states to accept disproportionate and inequitable reductions" in violation of the Law of the River. Ex. K to Ariz. Compl. (Arizona Draft EIS Comments (Mar. 2, 2026)) at 3. Arizona pointed out that the Draft EIS also contravened Section 602(a) of the Colorado River Basin Project Act, which "directs the Secretary to propose coordinated long-range operations" of the reservoirs on the River to comply with the Law of the River. *Id.* at 4. Arizona further explained why those deficiencies posed significant risks for Arizona in particular. For example, it warned that severe reductions in deliveries would threaten Arizona's critical semiconductor and agricultural industries. *Id.* at 1, 6-8. And it explained that the reductions proposed by the Draft EIS would have devastating impacts on Arizona tribes. *Id.* at 9.

Reclamation issued its Final Environmental Impact Statement (Final EIS) on July 31, 2026. Ex. A to Ariz. Compl.; *see* 91 Fed. Reg. 48,385 (July 31, 2026) (notice of availability). The Final EIS considered six alternatives to "address operations of Lake Powell and Lake Mead through their full operating ranges." Ex. A to Ariz. Compl. at ES-5. Among those six alternatives, the Final EIS indicated Reclamation will adopt the "Preferred Alternative," a ten-year decision framework containing operational principles and sideboards that would remain in place through 2036, with more specific operating guidelines issued in two-year increments. *Id.* at ES-8. Under the Preferred Alternative, the median annual release from Glen Canyon Dam under critically dry hydrology will be only 6.0 million

acre-feet. *Id.* at ES-30. And Lake Powell releases may fall as low as 5.0 million acre-feet. *Id.* at ES-9. Releases below the Long-Range Operating Criteria's 8.23 million acre-feet minimum, *see* p. 4, *supra*, are thus built into the framework as the norm for dry years. And over ten-year periods—the period over which the Compact measures the Upper Basin States' delivery obligation—the Final EIS projects median flows at Lee Ferry of 80.4 million acre-feet under average hydrology and 73.9 million acre-feet under critically dry hydrology. *Id.* at ES-30. Both figures fall below the minimum 82.5 million acre-feet that Articles III(c) and III(d) of the 1922 Compact require the Upper Basin States to deliver over any ten-year period, *see* pp. 2-3, *supra*.

Arizona again objected, explaining that the Preferred Alternative violates its rights under the 1922 Compact and the Law of the River. *See* Ex. M to Ariz. Compl. (Arizona Final EIS Comments (Aug. 10, 2026)) at 1-2. Arizona also objected to the Final EIS's adoption of a ten-year decision framework and reliance on operational principles and sideboards, which will constrain the agency for the next decade but also fail to provide any clarity about specific future agency action within those constraints. *Id.* at 2-3. Finally, Arizona expressed its concern that the Final EIS fails to assess the consequences of the proposed reductions on "Arizona's agricultural production, manufacturing, and municipal water users." *Id.* at 3-4.

In August 2026, Reclamation issued a Record of Decision (ROD) adopting the Preferred Alternative. ECF No. 1-3. Reclamation simultaneously issued operating guidelines for 2027 and 2028. ECF No. 1-4. The 2027-2028 Guidelines apply the Preferred Alternative to establish the criteria that govern the coordinated operation of Lake Powell and Lake Mead for the next two years.

The operating criteria for Lake Powell "are designed to protect a minimum Lake Powell elevation of 3,500 feet by initially seeking to maintain a minimum elevation of 3,510 feet." ECF No. 1-4 (2027-2028 Guidelines) § 5.1. Annual releases from Lake Powell are thus determined by the reservoir's projected elevation. *Ibid.* In years where Lake Powell's projected October 1 elevation is at or above 3,565 feet, Reclamation uses 8.23 million acre-feet as a starting point that can be adjusted downward to as low as 6.0 million acre-feet if the reservoir's projected elevation drops below 3,510 feet. *Id.* § 5.1(A). In "extraordinary circumstances"—where Lake Powell is projected to reach elevations below 3,500 feet—the Guidelines contemplate releases as low as 5.0 million acre-feet. *Id.*

§ 5.1(D). And in water years where the projected October 1 elevation is less than 3,565 feet, a release meeting the Long-Range Operating Criteria's objective of 8.23 million acre-feet is not even considered. *Id.* § 5.1(B)-(C).

The operating criteria for Lake Mead lock in reductions of 1.25 million acre-feet to the Lower Basin in both 2027 and 2028. ECF No. 1-4 (2027-2028 Guidelines) § 5.3(A). By volume, Arizona faces the largest share of those reductions: 760,000 acre-feet per year. *Id.* § 5.3(A)(2). California faces reductions of 440,000 acre-feet per year, and Nevada of 50,000 acre-feet per year. *Ibid*. In other words, Arizona is responsible for about 60% of the reductions that the 2027-2028 Guidelines impose on the Lower Basin.

**C. Nevada's Lawsuit**

On August 24, 2026, Nevada sued Interior and Reclamation, challenging the Final EIS, ROD, and 2027-2028 Guidelines. ECF No. 1. Nevada's complaint raises six counts. The first count alleges that the Final EIS, ROD, and 2027-2028 Guidelines failed to interpret and correctly apply the Law of the River. *Id.* ¶¶ 73-87. The fourth count alleges that the agency failed to respond to comments in violation of the APA, NEPA, and the Law of the River. *Id.* ¶¶ 100-103. And the remaining counts allege that Reclamation failed to consider a reasonable range of alternatives (Count II); failed to adequately consider environmental effects (Count III); failed to adequately analyze mitigation measures (Count V); and failed to designate States and local governments as cooperating agencies (Count VI), all in violation of the APA and NEPA. *Id.* ¶¶ 88-99, 104-111.

**ARGUMENT**

This Court should grant Arizona intervention as of right. The challenged agency actions will have direct and potentially catastrophic effects on Arizona. They will determine how much water Arizona receives over the next ten years, and they will affect the State's rights and obligations with respect to the rest of the Colorado River Basin. As one of the seven States that are parties to the 1922 Compact—and as the Lower Basin State that will bear the brunt of supply cuts over the next two years—Arizona has a right to be heard in this case. At minimum, this Court should grant Arizona permissive intervention so that it may protect its longstanding rights under the laws governing the Colorado River.

**I. Arizona is entitled to intervene as of right.**

Federal Rule of Civil Procedure 24(a)(2) requires a court, upon timely motion, to permit intervention of right by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." To determine whether a party satisfies Rule 24(a)(2), courts in this Circuit apply a four-part test: "(1) the motion must be timely; (2) the applicant must claim a significantly protectable interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action." *Wilderness Soc'y* v. *U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (citation and internal quotation marks omitted). The Ninth Circuit has a "liberal policy in favor of intervention" under Rule 24(a)(2) to "serve[ ] both efficient resolution of issues and broadened access to the courts." *United States* v. *City of Los Angeles*, 288 F.3d 391, 397-398 (9th Cir. 2002).

Arizona easily satisfies all four factors here. This is a canonical case for intervention as of right: A discrete natural resource may be parceled up in ways that impair a sovereign's interests.

**A. Arizona's motion is timely.**

"Timeliness hinges on three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Kalbers* v. *U.S. Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021) (citation and internal quotation marks omitted). Arizona's motion is timely under all three factors. And given the very early stage, the Court does not need to go beyond the first.

First, Arizona filed this motion at the earliest possible stage of the proceedings: less than two months after Nevada filed its complaint and before any defendant responded to it. Courts routinely grant intervention motions filed at this stage. *See Citizens for Balanced Use* v. *Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011); *United States* v. *Blue Lake Power, LLC*, 215 F. Supp. 3d 838, 841-842 (N.D. Cal. 2016).

Second, no party will "suffer[ ] prejudice from the grant of intervention at th[is] early stage."

*Citizens for Balanced Use*, 647 F.3d at 897. No defendant has responded to the complaint, and the Court has issued no rulings. As such, Arizona's intervention will not cause any "disruption or delay in the proceedings." *Id.*

Third, the time between Nevada's filing of the complaint and Arizona's motion is more than reasonable. Courts in this Circuit routinely find that motions to intervene filed at much later stages in the case—including, in some cases, after a responsive pleading has been filed—are timely. *See*, *e.g.*, *Citizens for Balanced Use*, 647 F.3d at 897 (finding motion timely when made "less than three months after the complaint was filed and less than two weeks after the Forest Service filed its answer to the complaint"); *Hoopa Valley Tribe* v. *U.S. Bureau of Reclamation*, 648 F. Supp. 3d 1196, 1200 (E.D. Cal. 2022) (intervention motion timely where filed "approximately four months after the original complaint, but well before any substantive matters had been heard or decided").

In sum, Arizona's motion is "undeniably timely." *Nevada Ass'n of Cntys.* v. *U.S. Dep't of the Interior*, 2014 WL 1338736, at *2 (D. Nev. Apr. 2, 2014).

**B. Arizona has a significant protectable interest in this action.**

An intervenor-as-of-right must establish that it has an "interest" "protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Citizens for Balanced Use*, 647 F.3d at 897; *see Wilderness Soc'y*, 630 F.3d at 1179. Again, Arizona easily satisfies that standard.

As one of the seven States of the Colorado River Basin, Arizona has an indisputable interest in this action. Arizona has legal rights in water from the Colorado River that are protectable under multiple federal laws. Those rights date back to the 1922 Compact, which Congress ratified and rendered "the law of the land, much like any other federal statute." *Texas* v. *New Mexico*, 602 U.S. 943, 950 (2024). Subsequent enactments and precedent reinforce Arizona's protectable interests in the Colorado River. *See* pp. 3-4, *supra*. The Colorado River Storage Project Act, for example, directs the government to "comply with the applicable provisions of the Colorado River Compact . . . in the storage and release of water from reservoirs in the Colorado River Basin." 43 U.S.C. § 620m. And the Supreme Court has repeatedly recognized Arizona's rights in the Colorado River. *See*, *e.g.*, *Arizona* v. *California*, 376 U.S. 340, 342 (1964) (recognizing apportionment of 2.8 million acre-feet of

Colorado River water to Arizona each year); *Arizona* v. *California*, 547 U.S. 150, 155 (2006) (same).

Even though "a prospective intervenor's asserted interest need not be protected by the statute under which the litigation is brought," Arizona checks that box, too. *Wilderness Soc'y*, 630 F.3d at 1179. The APA entitles any person "adversely affected or aggrieved by agency action within the meaning of a relevant statute" to judicial review. 5 U.S.C. § 702. There is no dispute that Arizona is "adversely affected" and "aggrieved" by the Final EIS, ROD, and 2027-2028 Guidelines within the meaning of the "relevant statute[s]," *i.e.*, the 1922 Compact, subsequent enactments reinforcing the Compact's requirements, and NEPA. Reclamation's actions set the operating conditions under which the agency will store, release, and deliver the water to which Arizona is entitled. Arizona maintains that those actions are unlawful and deprive the State of much-needed water. *See* pp. 4-7, *supra*.

The claims in this action directly relate to Arizona's rights. This Court's resolution of Nevada's claims will affect how much Colorado River water Arizona receives over the next ten years. The Final EIS, ROD, and 2027-2028 Guidelines dictate how Reclamation will manage shortages between the Upper and Lower Basins, and the Guidelines further constrain the allocation of any resulting reductions among the Lower Basin States over the next two years. Because Nevada's suit challenges the lawfulness of those actions, the resolution of its claims could alter the rules governing the availability and allocation of Colorado River water to Arizona. "In short, [Arizona's] water supply interests are entirely bound up with the operational regime[s]" challenged in this action and so are directly connected to the claims at issue. *California Trout, Inc.* v. *U.S. Bureau of Reclamation*, 115 F. Supp. 3d 1102, 1119-1120 (C.D. Cal. 2015).

**C. Disposition of this action may impair Arizona's ability to protect its interests.**

A proposed intervenor must also show that "disposing of the action may as a practical matter impair or impede [its] ability to protect its interest." *Wilderness Soc'y*, 630 F.3d at 1177 (quoting Fed. R. Civ. P. 24(a)(2)). "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Nevada Ass'n of Cntys.*, 2014 WL 1338736, at *4 (quoting Fed. R. Civ. P. 24 advisory committee's note to 1966 Amendment).

Arizona readily satisfies this requirement, too. The practical effects of any determination in

this action on Arizona are substantial and undeniable: This action bears directly on how much Colorado River water Arizona will be able to use over the next ten years. As the Ninth Circuit long ago noted in permitting a State to intervene in a water-rights dispute, "[e]ach state primarily depends upon its natural resources for its existence," and water is among the "most valuable natural resource[s]." *California* v. *United States*, 180 F.2d 596, 601 (9th Cir. 1950); *see id.* (noting that it "could [not] be doubted" that if a suit involved two States' claims to water, each State "would be entitled to appear as a party"). And courts have permitted parties with less existential interests to intervene in challenges to agency action. *See*, *e.g.*, *Nevada Ass'n of Cntys.*, 2014 WL 1338736, at *4 (finding "impairment of interest" factor satisfied and allowing intervention where a determination of the validity of Interior's action might prevent intervenor from "observ[ing] and report[ing] to the public about . . . wild horses").

The Ninth Circuit has held, moreover, that "where the prospective intervenor seeks to obtain remedies that differ from those sought by the original plaintiffs, it is reasonable to conclude that disposition of the litigation may impair the prospective intervenor's ability to protect its interests." *United States* v. *Stringfellow*, 783 F.2d 821, 827 (9th Cir. 1986), *vacated on other grounds sub nom. Stringfellow* v. *Concerned Neighbors in Action*, 480 U.S. 370 (1987). Although Arizona and Nevada are largely aligned on the Law of the River, they seek different remedies. Specifically, Arizona requests that this Court remand while leaving in place the 2027-2028 Guidelines to avoid the disruptive consequences of vacatur. *See* Ex. 2 (Ariz. Compl.) ¶ 12. Nevada, by contrast, asks this Court to vacate those Guidelines. *See* ECF No. 1 at 28. For that reason as well, disposition of this litigation might impair Arizona's ability to protect its interests.

**D. Representation of Arizona's interests by the existing parties may be inadequate.**

Finally, intervention as of right is appropriate when representation by the existing parties "may be inadequate." *Citizens for Balanced Use*, 647 F.3d at 898. The "burden of making that showing" is "minimal." *Trbovich* v. *United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). In evaluating this factor, courts consider "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use*, 647 F.3d at 898 (citation

omitted). The crux of this inquiry involves comparing the interests of the proposed intervenor with those of the existing parties. *Ibid.*

Under all those considerations, Arizona meets this requirement. Arizona's interests in this case are unique, and those interests cannot adequately be represented by any other party—much less by another State that has sued to protect its own unique, state-specific interests. Indeed, this suit ultimately implicates various States' competing claims to an increasingly limited natural resource. In that context, one State cannot adequately represent another merely because both share a relevant geographic feature. The State of Arizona has its own interests in this dispute, and only it can adequately represent them.

While that is sufficient reason to grant intervention, the differences in Arizona's and Nevada's complaints reinforce that intervention is warranted. While Arizona and Nevada share a similar objective of ensuring federal compliance with the APA, NEPA, and the Law of the River, they do not make identical arguments. For example, Nevada requests that this Court vacate the 2027-2028 Guidelines. *See* ECF No. 1 at 28. But as noted, Arizona plans to request that this Court remand *without* vacating the Guidelines because vacatur would be extraordinarily disruptive. *See* Ex. 2 ¶ 12. If the 2027-2028 Guidelines are vacated, Arizona will have no way of knowing how much water Reclamation will make available for Arizona in 2027 and 2028. *Ibid.* Leaving the 2027-2028 Guidelines in place while Reclamation revises the Final EIS and ROD gives Arizona necessary predictability. This is an important difference between Nevada's and Arizona's positions, and it counsels in favor of granting intervention. *See Citizens for Balanced Use*, 647 F.3d at 899 (reversing denial of intervention as of right where intervenor's interest in securing "broadest possible restrictions" differed from existing party's interest in "much narrower restrictions"); *see also United States* v. *Oregon*, 839 F.2d 635, 638 (9th Cir. 1988) (holding that intervention is appropriate so long as one party's "arguments will not include" all of the same "deficiencies raised by" the other party).

There are other arguments that are unique to Arizona. For example, Arizona's complaint raises various objections to the challenged actions stemming specifically from the comments it made during Reclamation's decision-making process, and from Reclamation's failure to adequately consider those comments. *See* Ex. 2 ¶¶ 74-77, 85-89. Arizona also raises objections that are rooted in State-specific concerns and interests. Specifically, Arizona will argue that Reclamation failed to properly consider

the social and economic effects of the Final EIS, ROD, and 2027-2028 Guidelines on Arizona, the State's farmers, and on other industries based in Arizona. *See id.* ¶¶ 97-106. Nevada, in turn, will presumably focus on its own comments and considerations in the administrative record. As the Ninth Circuit has held in reversing a district court's denial of intervention, interests "informed by specific regional . . . concerns" can bring a "unique perspective to . . . litigation that existing parties may neglect." *W. Watersheds Project* v. *Haaland*, 22 F.4th 828, 842 (9th Cir. 2022).

**II. Alternatively, this Court should grant Arizona permissive intervention.**

Even if this Court finds that Arizona is not entitled to intervene as of right, it should still grant permissive intervention under Rule 24(b).

A court may exercise its discretion to permit intervention under Rule 24(b)(1)(B) if an intervenor satisfies three requirements: "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Beckman Indus., Inc.* v. *Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). If these requirements are satisfied, courts may consider additional factors to determine whether to exercise that discretion, including: (1) whether intervention will "unduly delay or prejudice . . . the original parties"; (2) whether the applicant's "interests are adequately represented by existing parties"; and (3) the interests of "judicial economy." *Venegas* v. *Skaggs*, 867 F.2d 527, 530-531 (9th Cir. 1989) (citations omitted).

Arizona satisfies the threshold requirements, and each discretionary factor weighs in favor of permissive intervention.

**A. Arizona satisfies the requirements for permissive intervention.**

First, there is an independent jurisdictional ground. Arizona raises federal claims based on the APA, NEPA, and the collection of federal laws, regulations, and precedents that constitute the Law of the River. *See* Ex. 2 ¶¶ 110-161. Like Nevada, Arizona has a right to raise those federal claims in federal court. *See* ECF No. 1 ¶ 5 (citing 28 U.S.C. § 1331). It could do so in an independent suit and may do so if intervention is not granted.

Second, Arizona's motion is timely, for the reasons already explained. *See* p. 9, *supra*.

Third, Arizona's claims share common questions of law and fact with Nevada's claims. Both

States allege that the same trio of interrelated agency actions violate the same federal laws and regulations—the APA, NEPA, and various provisions of the Law of the River. Because the "rights and liabilities of the parties all arise" from the same agency actions, this requirement is also satisfied. *MGM Grand Hotel, Inc.* v. *Smith-Hemion Prods., Inc.*, 158 F.R.D. 677, 680 (D. Nev. 1994).

**B. Discretionary factors weigh in favor of intervention.**

Each of the factors that courts consider in deciding whether to exercise their discretion to permit intervention also weighs in favor of intervention. First, intervention is sought before the defendants have responded to the complaint and before the Court has issued any rulings, so there is no delay or prejudice. *See* p. 9, *supra*; *see also Tonkawa Tribe of Indians of Okla.* v. *Scientific Games Corp.*, 2021 WL 3847802, at *4 (D. Nev. Aug. 27, 2021) (Navarro, J.) (granting permissive intervention where party opposing intervention "fail[ed] to explain the specific delay and prejudice that would result from allowing Intervenor to enter this lawsuit"). Second, Nevada does not adequately represent Arizona's interests because Arizona is its own sovereign representing interests within its borders; because Nevada's arguments do not include the State-specific deficiencies Arizona raises in its complaint; and because Arizona seeks a different form of relief. *See* pp. 10-13, *supra*. Finally, intervention will serve judicial economy because it will allow Arizona to litigate its claims in this action rather than in a largely overlapping APA suit. *See Venegas*, 867 F.2d at 531. Permissive intervention is warranted.

**CONCLUSION**

For the foregoing reasons, Arizona respectfully requests that this Court grant its motion to intervene.

DATED: October 16, 2026

Respectfully submitted,

*/s/ Joseph C. Reynolds*

Mark A. Hutchison (Bar No. 4639)
Hutchison & Steffen, PLLC
10080 W. Alta Drive, Suite 200
Las Vegas, Nevada 89145
(702) 385-2500
mhutchison@hutchlegal.com

Joseph C. Reynolds (Bar No. 8630)
Hutchison & Steffen, PLLC
100 W. Liberty Street, Suite 765
Reno, Nevada 89501
(775) 853-8746
jreynolds@hutchlegal.com

Nicole D. Klobas
[*Pro Hac Vice Motion Forthcoming*]
Arizona Department of Water Resources
1110 West Washington Street, Suite 310
Phoenix, Arizona 85007
(602) 771-8477
ndklobas@azwater.gov

Jeffrey B. Wall
[*Pro Hac Vice Motion Forthcoming*]
Morgan R. Ratner
[*Pro Hac Vice Motion Forthcoming*]
Gibson, Dunn & Crutcher LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500
jwall@gibsondunn.com
mratner@gibsondunn.com

Yaira Dubin
[*Pro Hac Vice Motion Forthcoming*]
Parisa Sadeghi
[*Pro Hac Vice Motion Forthcoming*]
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000
ydubin@gibsondunn.com
psadeghi@gibsondunn.com

Gregg J. Costa
[*Pro Hac Vice Motion Forthcoming*]
Gibson, Dunn & Crutcher LLP
811 Main Street, Suite 3000
Houston, Texas 77002
(346) 718-6600
gcosta@gibsondunn.com

Stephen J. Hammer
[*Pro Hac Vice Motion Forthcoming*]
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
(214) 698-3100
shammer@gibsondunn.com

*Attorneys for Plaintiff-Intervenor*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the Motion to Intervene of the State of Arizona and Memorandum of Points and Authorities in Support to be electronically filed and served on all counsel of record using the Court's CM/ECF system.

DATED: October 16, 2026

*/s/ Joseph C. Reynolds*
Joseph C. Reynolds

## INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | [Proposed] Order Granting the State of Arizona's Motion to Intervene |
| 2 | Complaint in Intervention of the State of Arizona |