# EXHIBIT C

## Letter from the Governors' Representatives of Arizona, California, and Nevada to Commissioner Touton (Aug. 15, 2023)

**The Colorado River Basin States Representatives of Arizona, California, and Nevada**

August 15, 2023

The Honorable Camille Touton
Commissioner
U.S. Bureau of Reclamation
1849 C Street, NW
Washington, D.C. 20240

Sent via Electronic Mail

Dear Commissioner Touton:

The undersigned Governors' Representatives of the States of Arizona, California, and Nevada (collectively, the Lower Division States) respectfully submit the following comments in response to the Bureau of Reclamation's *Notice of Intent To Prepare an Environmental Impact Statement and Notice To Solicit Comments and Hold Public Scoping Meetings on the Development of Post-2026 Operational Guidelines and Strategies for Lake Powell and Lake Mead*, Fed. Reg. Vol. 88, No. 116, p. 39455 (June 16, 2023). We appreciate this opportunity to provide comments on the scope of issues that should be considered in the upcoming environmental impact statement for post-2026 operations for Lake Powell and Lake Mead (EIS or Post-2026 EIS).

The Lower Division States have a unique interest in the management of the Colorado River based on the Compact, laws and agreements that have provided the framework for management of the Colorado River System for over a century. In particular, the past decades show that collaboration among the Secretary, the Basin States, Mexico, the Tribes, water users and NGOs can result in better management of the System and avoid the protracted water supply uncertainty and other risks associated with litigation. Engagement of the Lower Division States in the development of the Post-2026 EIS will be essential to ensure the effectiveness of the new guidelines. The Lower Division States are committed to working with Reclamation throughout the National Environmental Policy Act (NEPA) process and anticipate developing a Basin States alternative for consideration and evaluation for Post-2026 Operations, as we did in the NEPA process for the 2007 Interim Guidelines.

As acknowledged in the June 16, 2023 notice in the Federal Register, the Colorado River Basin is suffering from a prolonged period of drought and the period from 2000 through the present is estimated to be the second driest period of record. The 2007 Interim Guidelines for Lower Basin Shortages and Coordinated Operations for Lake Powell and Lake Mead (2007 Guidelines) were intended to reduce the risks to Colorado River water users associated with the early years of the drought and the substantial reduction in storage on the Colorado River System. However, as the drought conditions continued, it became clear that additional responsive actions were needed to complement the 2007 Guidelines.

Since adoption of the 2007 Guidelines, the Lower Division States and water users have continued to take action to reduce demands and manage Lake Mead reservoir elevations. By developing partnerships and investing billions of dollars, Lower Division States and waters users conserved and contributed an additional 5.1 million acre-feet of water in Lake Mead through various activities including Intentionally Created Surplus (ICS), system conservation, partnerships with Mexico, and domestic programs. Together these actions have raised the elevation of Lake Mead by 72 feet. The Lower Division States also worked cooperatively with other river partners including the Upper Division States of Colorado, Wyoming, New Mexico and Utah, Reclamation, Mexico, Tribes, and NGOs. Those efforts include the Lower Basin Memorandum of Understanding, the Pilot System Conservation Program, the 500+ plan, projects enabled under Minute 319 and 323 to the Mexican Treaty, and system efficiency projects. The releases from Lake Mead in 2023 are anticipated to be only about 7.7 million acre-feet (maf), the lowest on record, demonstrating the success of the Lower Division States and water user efforts to reduce demands.

The Basin States and the Secretary of the Interior (Secretary) agreed to the federally authorized 2019 Colorado River Basin Drought Contingency Plans (DCP) to advance these efforts. More recently, in 2022, the Department of the Interior, after consultation with the Basin States and Tribes in the Colorado River Basin, took unprecedented emergency action to protect critical elevation and infrastructure in Lake Powell. As a result of these efforts, Lake Mead has remained above critical reservoir elevations. In this context, the Lower Division States offer the following comments:

## I. Purpose and Need

The Post-2026 EIS must seek to provide reliability and water-supply certainty to the 40 million people who rely on the Colorado River for their lives and livelihoods. Operations of the two reservoirs must be consistent with the Law of the River and should respond to a wide range of hydrologies, storage conditions, and related elements in the Colorado River System, incorporating effective, flexible mechanisms to protect storage and critical elevations at Lakes Powell and Mead while providing predictable operations on which water users can rely. Most significantly, the Post-2026 operations should seek to address the imbalance between supply and demand on the Colorado River System in order to assure stability into the future.

## II. Scope of Post-2026 EIS

As described above, the scope of the Post-2026 EIS should address operations of Lake Powell and Lake Mead, particularly water releases, water deliveries, and conservation associated with those two reservoirs. These concerns will be substantial enough that the scope must be limited if we are to succeed. In particular, the Post-2026 EIS should not revisit the Long-Term Experimental Management Plan or records of decisions for Upper Basin reservoirs above Lake Powell. Reconsultation with the Fish and Wildlife Service regarding the Multi-Species Conservation Program in the Lower Basin must occur simultaneously with the Post-2026 EIS process.

The Lower Division States believe the Law of the River must be the foundation for the Post-2026 Operations. The existing framework also allows for collaboration and consensus which

helps avoid the uncertain outcomes that result from litigation. The Post-2026 EIS must analyze whether alternatives are consistent with the 1922 Colorado River Compact non-depletion obligations and delivery obligations to Mexico. Alternatives should include actions necessary to ensure compliance with such obligations.

It should also incorporate the best available science, incorporating a broad but plausible range of hydrology to address the potential impacts of climate change and to establish guidelines for healthy management of the Colorado River System. Such a robust analysis will be necessary to withstand legal scrutiny. The management of Lake Powell and Lake Mead may depend on reservoir elevations, hydrologic projections, system contents and other factors throughout the Basin. The alternatives considered must incorporate the flexibility and adaptive management necessary to respond to changing conditions while ensuring sufficient certainty for the Basin States and Colorado River water users to manage water supplies.

In particular, the alternatives considered in the Post-2026 EIS should include the following components:

A. Manage Lake Powell and Lake Mead operations to reduce the risk of reaching critical elevations in either reservoir.

The Post-2026 operations must include predictable and easily understood criteria for releases from Lake Powell to Lake Mead. At the same time, the criteria should also include provisions for adaptation to unexpected changes in hydrology. Striking a balance will be critical to reducing the risk of reaching critical elevations in the two reservoirs while providing water users with the certainty necessary to manage water supplies throughout the term of the Post-2026 operations. We must continually improve our modeling framework by incorporating updated science regarding future inflows and demand projections in both the Upper Basin and the Lower Basin. Uncertainty about Upper Division water use makes it highly challenging to estimate depletions and flows and to quantify unmet demands. Upper Division States' diversions, return flows and depletions of Colorado River water must be accounted for to provide a foundational basis for the management of the contents in the Colorado River System. To help reduce the conflicts between the Upper Basin and Lower Basin regarding actions that would impact coordinated reservoir operation since the 2007 Guidelines were adopted, Reclamation should evaluate use of new triggers for releases other than Lake Mead and Lake Powell elevations, such as total system contents. Alternatives should also consider the use of storage in the Colorado River System to support critical elevations at Lake Powell and Lake Mead. Finally, in a parallel process with the Post-2026 EIS, Reclamation should evaluate potential improvements at Glen Canyon Dam that could enhance its operational capacity and ensure that water can safely pass through the dam at low elevations.

B. Address the existing imbalance between available water supplies and demands in the Colorado River Basin.

The overallocation of water supplies has combined with the multi-decadal drought and other effects of climate change to drastically reduce storage in Lake Powell and Lake Mead. In the Upper Basin, variable hydrology impacts water availability each year on a source-by-source basis. Despite voluntary actions involving significant financial investments to reduce demands over the

last twenty years, the Lower Basin is now implementing significant mandatory supply reductions. The Post-2026 EIS must identify the necessary actions to balance the available water supplies and the uses that rely on the Colorado River. While we have collaborated on past interim measures that appeared bold in their time, we are now called upon to ensure that we use no more than is available to ensure that the Colorado River can continue to serve our needs long into the future.

C. Develop storage and conservation programs that maximize voluntary reductions in water use throughout the Basin, including a framework for potential augmentation of Colorado River water supplies.

The Post-2026 EIS should evaluate mechanisms, such as ICS, for voluntary conservation and storage to provide individual contractors and entitlement holders with water supply flexibility and the ability to manage annual demand variability, as well as to protect the system as a whole. While we have voluntarily conserved water through the development of ICS, we must broadly re-evaluate all parameters of the program to ensure that it properly incentivizes conservation while avoiding negative impacts to other water users. Additionally, we have had success with voluntary conservation efforts for the benefit of the system, including the historical volumes proposed in the Lower Basin Plan. We must identify programs that can incentivize voluntary conservation and maximize water efficiencies and technologies across all sectors throughout the Basin. To the extent that financial incentives are included, we must identify a durable funding source. Similarly, the Post-2026 EIS should evaluate various voluntary conservation activities and conserved water volumes within the Upper Division States, together with storage of such water in Lake Powell and recovery when appropriate.

We have long known that in an overallocated system, the surest way to balance limited water supplies with demands is to increase the available supplies. The Post-2026 operations should include a framework with incentives for augmenting Colorado River supplies and implementing exchanges to distribute those augmented supplies efficiently through the system, particularly within the Lower Basin. Augmentation could be developed through binational programs like desalination or through regional programs within the United States. These ideas will not come to fruition without the necessary framework for implementation on the Colorado River.

D. Enhance predictability of mandatory reductions.

Without question, Colorado River users will face mandatory reductions to their water supplies in light of the long-term drought, other effects of climate change, and reservoir elevations. The Post-2026 EIS should define mandatory reductions and evaluate ways to reduce risk associated with those mandatory reductions under variable hydrology. All water users will benefit from additional certainty regarding when reductions will be determined and how those reductions will be distributed, including developing the criteria for operations necessary to protect critical elevations while allowing water users sufficient time to plan for and manage reductions.

E. Surplus Criteria

Although the likelihood of surplus conditions in the Lower Basin is minimal in the future, the Post-2026 EIS should consider alternatives that include criteria for distributing surplus in the Lower Basin.

## III. Additional Issues Regarding Alternatives

As mentioned previously, the Basin States intend to develop a consensus alternative for consideration, as we did during the development of the 2007 Guidelines. However, there are outstanding questions as to what will constitute the "No Action Alternative" for purposes of the Post-2026 EIS. In particular, certain provisions of the 2007 Guidelines and DCP related to ICS extend beyond 2026 and should be included in the No Action Alternative. We request that you consult the Basin States for input on the development of the No Action Alternative.

Additionally, alternatives analyzed during the pending NEPA process regarding Near-Term Colorado River Operations should not inform the Post-2026 EIS alternatives. Rather, alternative operational plans for Post-2026 should be informed by the current scoping process and other input from stakeholders during the public process, as well as operating experience under the 2007 Guidelines and the DCP. The Basin States intend to develop an alternative for consideration in the Post-2026 EIS, and will seek to gain consensus support from Tribes in the Colorado River Basin and other stakeholders, as well.

## IV. Term

The Post-2026 EIS must evaluate a term that is sufficient to enable investments in new technologies and augmentation programs. However, the term must also be limited to allow water managers to evaluate and respond to climate change, the operational experience gained from implementation of new operations and programs, and other changing circumstances.

## V. Engagement

As we have stated before, the unprecedented challenges we face require greater inclusivity and collaboration to achieve lasting solutions. The Lower Division States understand that the success of future operations of the Colorado River system depends on working with water users and others invested in the outcomes of effective Post-2026 operations.

We look forward to continued collaboration with Colorado River Basin Tribes. Successful management of the Colorado River will depend on the support and participation of the Tribes.

Collaboration with Mexico is critical to charting the course of Colorado River through Post-2026 operations. While we recognize that any actions involving deliveries to Mexico will be determined through a separate process involving the International Boundary and Water Commission (IBWC), we expect that process to occur simultaneously and the Post-2026 EIS should consider and evaluate potential future actions to ensure environmental compliance. Additionally, the active and direct participation of the Basin States' representatives in formal meetings with Mexico has also been essential to the development and implementation of Minute Nos. 317, 318, 319, and 323. The direct engagement between the States, the U.S. (including both Interior and the IBWC) and Mexico has consistently demonstrated the path to success.

The Lower Division States also understand the importance of engagement with other stakeholders, including NGOs, interested in the Colorado River. Collaboration and cooperation

among all water users and stakeholders will be essential to achieve success, particularly if Congressional authorization is required.

## VI. Reservation of Rights

By providing these comments, we do not waive any rights, including any claims or defenses, we may have or that may accrue under any existing federal or state law or administrative rule, regulation, or guideline. Any failure by the undersigned to address specific aspects of the NOI, shall not be construed as an endorsement or an admission with respect to any factual or legal issue for the purposes of any future legal, administrative, or other proceeding. Moreover, we reserve the right to provide further comments and engage with Reclamation as it proceeds with subsequent phases of the NEPA process.

## VII. Conclusion

Finally, we reiterate the unique role that the Basin States play in management of the Colorado River. We look forward to continuing our work with Reclamation and Interior, the Tribes, Mexico, the Upper Division States and other stakeholders as we seek to protect the Colorado River system now and in the future.

Respectfully,

Thomas Buschatzke
Governor's Representative
State of Arizona

J.B. Hamby
Governor's Representative
State of California

John J. Entsminger
Governor's Representative
State of Nevada

cc: U.S. Bureau of Reclamation via Electronic Mail – crbpost2026@usbr.gov