# EXHIBIT I

## Letter from the Governors' Representatives of Arizona, California, and Nevada to Commissioner Touton (June 25, 2024)

**Colorado River Basin States Representatives of
Arizona, California, and Nevada**

June 25, 2024

The Honorable Camille Calimlim Touton
Commissioner
United States Department of Interior
Bureau of Reclamation
1849 C Street NW
Washington, D.C. 20240-0001

Sent via Electronic Mail and U.S. Post

Re: Upper Division States' June 11, 2024, Letter Regarding 602(a) Storage Considerations in the No-Action Alternative

Dear Commissioner Touton:

The undersigned governors' representatives of the Lower Division States of Arizona, California, and Nevada ("Lower Division States") received a copy of the above-referenced Upper Division States' Letter ("Upper Division Letter") directed to your attention. We appreciate the opportunity to help inform the Bureau of Reclamation's ("Reclamation") evaluation of impacts incident to alternative Post-2026 Colorado River operating regimes pursuant to the National Environmental Policy Act ("NEPA"). We provide this letter to emphasize where we agree with our Upper Division States colleagues on what should be included in the No-Action Alternative, to bring into sharp focus where applicable law does not support their assertions, and to point out the necessity of analyzing potential enforcement of the Colorado River Compact in all alternatives.

The No-Action Alternative should represent operations dictated by the Law of the River remaining after expiration of the 2007 Interim Guidelines in December 2026. As correctly noted in the Upper Division Letter, one of those laws is the Colorado River Basin Project Act of 1968 (Public Law No. 90-537), which, among other things, provides the following:

> In order to comply with and carry out the provisions of the Colorado River Compact [of 1922], the Upper Colorado River Basin Compact, and the Mexican Water Treaty, the Secretary shall propose criteria for the coordinated long-range operation of [the CRSP reservoirs and Lake Mead] . . . . **The criteria shall make provision for the storage of water in [CRSP Reservoirs] and releases of water from Lake Powell in the following listed order of priority**:

> 1. releases to supply one-half the deficiency described in article III(c) of the Colorado River Compact, if any such deficiency exists and is chargeable to the States of the Upper Division . . . ;
>
> 2. releases to comply with article III(d) of the Colorado River Compact, less such quantities of water delivered into the Colorado River below Lee Ferry to the credit of the States of the Upper Division from other sources; and
>
> 3. **storage of water not required for the releases specified in clauses (1) and (2)** of this subsection **to the extent the Secretary . . . shall find this to be reasonably necessary to assure deliveries under clauses (1) and (2)** without impairment of annual consumptive uses in the Upper Basin pursuant to the Colorado River Compact: *Provided*, That water not so required to be stored shall be released from Lake Powell: (i) to the extent it can be reasonably applied in the States of the Lower Division to the uses specified in article III(e) of the Colorado River Compact [except when] the active storage in Lake Powell is less than the active storage in Lake Mead, (ii) to maintain, as nearly as practicable, active storage in Lake Mead equal to the active storage in Lake Powell . . . .

Colorado River Basin Project Act, Section 602(a) (emphasis added). Section 602(a) directs the Secretary to create operating criteria for the CRSP reservoirs and Lake Mead that, consistent with the Colorado River Compact, the Upper Colorado River Basin Compact, and the Mexican Treaty obligation, prioritize the release of water from Lake Powell to satisfy the Upper Division's Mexican water delivery obligation and the Lower Division States' rights under article III(d) of the Colorado River Compact (602(a)(1)-(2)). ***Only after*** satisfaction of those obligations may water be stored in CRSP reservoirs under 602(a)(3) to satisfy those same stated obligations of 602(a)(1)-(2) in future years. And volumes in excess of those needed under 602(a)(1)-(3) must be released as necessary to equalize storage in Lake Mead and Lake Powell, and otherwise as needed by the Lower Basin for beneficial uses when storage in Lake Powell equals or exceeds that in Lake Mead.

As directed by the Colorado River Basin Project Act, the Secretary issued the criteria for reservoir operations on June 8, 1970. *See* Criteria for Coordinated Long-Range Operation of Colorado River Reservoirs Pursuant to the Colorado River Basin Project Act of September 30, 1968 ("LROC"). The LROC was the subject of six formal reviews after 1970, with the most recent modifications included in a Notice of Final Decision published on March 29, 2005. The No-Action Alternative evaluated by Reclamation as part of the ongoing Post-2026 NEPA process should incorporate releases from Lake Powell and storage in the Upper Basin as provided in the current LROC.

The LROC requires the Secretary to create annual plans of operation for the CRSP reservoirs and Lake Mead. In such plans, we agree with our Upper Division colleagues that the Secretary must include a determination, consistent with 602(a)(3), as to how much water is needed in storage to satisfy future delivery requirements to Mexico and the Lower Basin under 602(a)(1) and (2) ("602(a) Storage"). However, we part with our Upper Division colleagues on their bare assertion that the

LROC's 602(a) Storage determination can reduce the annual releases prioritized in 602(a)(1)-(2). Instead, the 602(a) Storage calculation required by the LROC is determinative only of the question whether, in a given year, ***more*** than 8.23 maf must be delivered to the Lower Basin for equalization of the active volumes in Lakes Mead and Powell or for beneficial use in the Lower Basin States under Article III(e) of the Compact (when active storage in Lake Powell is equal to or more than active storage in Lake Mead). Accordingly, the LROC's default "objective" is to release 8.23 maf to Mexico and the Lower Basin regardless of the 602(a) Storage calculation. Then, if there is sufficient water in Upper Basin reservoirs in excess of the 602(a) Storage calculation, the Secretary ***must*** release ***more than 8.23 maf***, under the conditions set forth by Congress in 602(a) and the Secretary in the LROC. Nothing in 602(a) or the LROC suggests the conditions under which less than 8.23 maf would be released each year for the Lower Basin and Mexico. Moreover, Congress has articulated the delivery priorities, which cannot be reordered or subordinated to any other interests, including the maintenance of existing uses in the Upper Basin.

We express no opinion regarding the concern raised in the Upper Division Letter regarding a proxy for, or the means by which, Reclamation would calculate 602(a) Storage in the LROC. The Upper Division States correctly point out that the Equalization Line in the 2007 Interim Guidelines may not be the correct calculation of the volume needed to protect future releases to the Lower Division States and Mexico consistent with the priorities expressly set out by Congress in the Colorado River Basin Project Act. An earlier rule promulgated by Reclamation on May 19, 2004, 69 FR 28945, entitled Notice of Adoption of an Interim 602(a) Storage Guideline for Management of the Colorado River and containing an algorithm for the calculation of 602(a) Storage, which expired in 2016, consistently over-estimated Upper Basin demands and incorrectly incorporated protection of the power pool. If Reclamation were to adopt the No-Action Alternative as a preferred alternative, we would respectfully request that Reclamation revisit how it calculates 602(a) Storage using the best available science and data to properly characterize the conditions under which water in excess of 8.23 maf must be released to the Lower Basin and Mexico.

The Upper Division Letter suggests that the minimum release might be less than 8.23 maf based on other "governing laws and compacts" that they fail to identify. Whether the LROC might produce a different result than, for example, our Upper Division colleagues' view of minimum 1922 Compact compliance is not the question for Reclamation as it evaluates the No-Action Alternative. The question is which laws are in place and unaffected by the expiration of the 2007 Interim Guidelines, and the LROC and 602(a) are two such applicable laws. The Upper Division Letter essentially asks Reclamation to take an action – specifically, ignoring the minimum objective release of 8.23 maf required annually under applicable law that will survive the expiration of the 2007 Interim Guidelines – within the No-Action Alternative.[1] Doing so simply cannot be part of the No-Action Alternative.

[1] Likewise, for an action alternative or revision of the LROC, the Lower Basin States would argue that the minimum objective release should also include carriage losses for the obligation to Mexico. However, we accept that reliance on the LROC as it currently stands is appropriate for the No-Action Alternative.

Additionally, while we remain committed to arriving at an equitable, agreed-upon sharing of the pain caused by climate change and multi-decadal drought across the Basin, the Lower Division States note that all the alternatives submitted for Reclamation's consideration, including our own, would likely result in a Compact call under Article III(d) of the 1922 Compact. The impacts of such a call must be evaluated with respect to any alternative where less than the volumes described in Article III(b), (c), (d) and (e) of the Colorado River Compact may be released from Lake Powell to the Lower Basin. Such an analysis will likely be relevant to all alternatives under consideration.[2] Further, it is reasonable to conclude that impacts in the Upper Basin caused by making up any Article III(d) shortfall would occur consistent with Upper Division obligations set forth in the Upper Colorado River Basin Compact of 1948, including curtailments. Accordingly, failure to assume such activities would be inconsistent with the Law of the River and insufficient under NEPA.

We note as well our concern regarding the suggestion in Reclamation's May 9, 2024, draft "key Modeling Assumptions" document that indicates releases may be less than 8.23 maf in a given year under the No-Action Alternative because of "physical limitations." As we understand it, this is not intended to represent any specific action by Reclamation to protect critical elevations or infrastructure or a "hard protection" of elevation 3,490 feet. Instead, this is a reference to the physical limitations of the infrastructure to release water at certain elevations.

While we agree there may be physical limitations at Glen Canyon Dam that Reclamation should modify, and while we appreciated the opportunity to have our technical staffs visit and comment on the scaled models of the facilities, such limitations are still under review, are the subject of future reports by Reclamation, and should be addressed by Reclamation in a future or parallel process that determines appropriate alternatives for an infrastructure fix. Moreover, to reduce releases from Lake Powell below Compact requirements because of physical limitations, without revising the operating criteria for the reservoirs to appropriately prioritize those releases, would cause Reclamation to run afoul of several key elements comprising the Law of the River--including, without limitation, the Boulder Canyon Project Act, the Colorado River Storage Project Act, and the Colorado River Basin Project Act (including section 602(a), which explicitly directs the Secretary to manage the federal reservoirs to prioritize releases for Compact compliance, second only to releases to satisfy the Treaty obligation to Mexico). While the No-Action Alternative should remain No-Action for purposes of this NEPA process and should not include protection of any elevation of Lake Powell, the Lower Division States remain ready, willing, and able to work with other stakeholders and Reclamation on the most expeditious resolution to the physical limitations at Glen Canyon Dam.

The Lower Division States agree with Reclamation's assessment in initiating this NEPA process that neither the No-Action Alternative nor a continuation of current strategies are sufficient

---

[2] We note that compliance with the Colorado River Compact is "inextricably intertwined" with operations of the various federal reservoirs, and with Reclamation's ability to satisfy its Treaty obligations to Mexico and water delivery contracts in the Lower Basin. *See Texas v. New Mexico*, 602 U.S. ___, ___ (2024) (slip op. at 9) (quoting *Texas v. New Mexico*, 583 U.S. 407, 413 (2018); *see also* 602(a).

to address the risk to the Colorado River Basin posed by climate change. However, informed decision-making can only be fostered by accurately characterizing the rule set applicable to the No-Action Alternative and then evaluating the environmental and social impacts likely to result under that set of rules. And our expectation is that Reclamation will neither include actions in the No-Action Alternative nor ignore any applicable law surviving the 2007 Interim Guidelines.

We hope our willingness to roll up our sleeves, be creative, and absorb our fair share of the impacts caused by climate change within the Basin is apparent from our Lower Basin Alternative submittal, and we remain committed to working with all stakeholders in the Basin willing to do the same.

Respectfully,

Thomas Buschatzke
Governor's Representative
State of Arizona

J. B. Hamby
Governor's Representative
State of California

John J. Entsminger
Governor's Representative
State of Nevada

cc: Jacklynn Gould, Regional Director – Lower Colorado Basin, Bureau of Reclamation
Wayne Pullan, Regional Director – Upper Colorado Basin, Bureau of Reclamation
Russ Callejo, Deputy Regional Director, Bureau of Reclamation
Carly Jerla, Senior Water Resource Program Manager, Bureau of Reclamation
Rebecca Mitchell, Governor's Representative, State of Colorado
Gene Shawcroft, Governor's Representative, State of Utah
Estevan Lopez, Governor's Representative, State of New Mexico
Brandon Gebhart, Governor's Representative, State of Wyoming