# EXHIBIT M

## Arizona’s Comments on the Final Environmental Impact Statement (Aug. 10, 2026)

KATIE M. HOBBS
GOVERNOR

THOMAS BUSCHATZKE
DIRECTOR

ARIZONA DEPARTMENT OF WATER RESOURCES
1110 WEST WASHINGTON STREET, SUITE 310
PHOENIX, ARIZONA 85007
602.771.8500
AZWATER.GOV

August 10, 2026

*Via email*
andrea_travnicek@ios.doi.gov
crbpost2026@usbr.gov

**Re: State of Arizona Comments on Post 2026 Colorado River FEIS**

Assistant Secretary Travnicek:

Arizona submits this letter in response to the Final Environmental Impact Statement (FEIS) for the Post-2026 Operational Guidelines and Strategies for Lake Powell and Lake Mead, including the preferred alternative that the FEIS describes. Arizona incorporates by reference the previous submissions that it has made to the Bureau of Reclamation, including the comments it submitted to the Bureau on March 2, 2026 (*State of Arizona Comments on the Post-2026 Colorado River Reservoir Operations Draft Environmental Impact Statement (EIS Number 20250184)*). In advance of the forthcoming Record of Decision, Arizona writes to make clear its objections to several aspects of the preferred alternative outlined in the FEIS and that the Bureau intends to adopt in the Record of Decision.

***First***, Arizona objects to the preferred alternative because it is inconsistent with the Colorado River Compact and the Law of the River. Although the FEIS states that "the Department intends to adopt and implement the guidelines in a manner consistent with the Law of the River," the Department nowhere purports to construe the Law of the River or adhere to its requirements, including the delivery obligations set forth in Article III(d) of the Colorado River Compact. In fact, the FEIS does not even mention the Colorado River Compact. Arizona expressly reserves its rights to demand that the party States and the federal government adhere to the Colorado River Compact and the Law of the River, in terms of both the party States' water usage and the federal government's operation of federal facilities upstream of Lees Ferry. Arizona recognizes that the Department has broad authority to establish operational guidelines for Colorado River infrastructure. But that authority does not displace the legal obligations imposed by the Compact. To the contrary, the Colorado River Basin Project Act requires "[a]ll Federal officers and agencies" to "comply" with the Compact "in the storage and release of water from all reservoirs and in the operation and maintenance of all facilities in the Colorado River system." 43 U.S.C. § 1551(a), (c). Nothing in the Lower Division States' continued participation in negotiations with the federal government and the Upper Division States constitutes a waiver of Arizona's Compact rights.

Far from adhering to the Compact and the Law of the River, the Department has refused even to take a position on what federal law requires. For decades, the Department could avoid interpretive disputes over

the Law of the River because consensus agreements among the affected water users supplied the operative rules for managing the system. No such consensus exists for post-2026 operations. The Department must therefore abide by the Compact and the Law of River in planning post-2026 operations. By refusing even to articulate its understanding of those requirements, the Department gives Arizona neither transparency about how the River will be managed nor any basis on which to plan for its water future. As a result, Arizona reserves the right to seek the resolution of its Compact rights in an appropriate judicial forum.

***Second***, Arizona does not agree to a preferred alternative framework of longer than two years. The Lower Division States' proposal was intentionally limited to a short-term, two-year period. That short-term period would have allowed the States to reasonably anticipate climate conditions and negotiate terms consistent with the Law of the River, while also remaining flexible to develop a longer, comprehensive solution. The preferred alternative does not take that approach. Although the preferred alternative would issue operating guidelines in anticipated two-year intervals, it adopts a 10-year decision framework that would maintain the same operational principles and sideboards through 2036. The FEIS offers no technical or legal justification for a 10-year term. And its stated rationale—that the framework "establishes transparency and predictability for future decision making"—is contradicted by the framework itself, which leaves every consequential operating decision to be made later and rests on the Department's own recognition that "additional authorities may be developed." ES.2.2; ES.1.2. Arizona does not accept a framework that gives the federal government the discretion to select from a wide range of alternatives—including catastrophic cuts to the Lower Basin—every two years for the next decade.

***Third,*** the Long-Range Operating Criteria (LROC) cannot be modified through the Environmental Impact Statement (EIS) process. The LROC provide that a minimum of 8.23 MAF must be released from Lake Powell annually. Coordinated Long-Range Operation, 35 Fed. Reg. 8,951–52 (June 10, 1970). Those operating criteria reflect the statutory priorities established in Section 602(a) of the Colorado River Basin Project Act, pursuant to which the LROC were promulgated in 1970. *See* 43 U.S.C. § 1552. The FEIS confirms that the Department is contemplating releases below 8.23 MAF from Lake Powell as part of its preferred alternative—the operational sideboards, for example, permit annual releases as low as 5.0 MAF, and the FEIS elsewhere (at ES.2.2.2) asserts that future guidelines may provide for "temporary operational actions that are not otherwise provided for under the LROC." That approach is inconsistent with the LROC and cannot be established as an operational norm going forward.

***Fourth***, the preferred alternative improperly leaves Upper Initial Unit (UIU) contributions undefined. It provides only for the "potential" maximum use of the UIUs, makes Upper Basin contributions "voluntary," and caps even those voluntary Upper Basin contributions at 200,000 acre-feet per year, contingent on hydrologic conditions—a fraction of the reductions the Lower Division States are being asked to bear. Deferring UIU contributions to later, unspecified decision-making processes while locking in Lower Division reductions is unacceptable to Arizona. The UIUs should have been addressed as part of the preferred alternative. And they should have been used to the maximum extent practicable to meet the twin goals of protecting the infrastructure of the Colorado River and ensuring compliance with the Law of the River. Section 602(a) sets the priorities for the coordinated operation of the UIUs: releases to satisfy the Mexican Treaty burden and Article III(d) come first, and storage comes only after those releases are satisfied. 43 U.S.C. § 1552(a)(1)–(3). A framework that treats maximum use of the UIUs as merely "potential" while prescribing firm reductions for the Lower Basin inverts those statutory priorities.

***Fifth***, Arizona does not consent to annual reductions of up to 3.0 MAF that the FEIS's operational sideboards would authorize for the Lower Basin (which are modeled in the FEIS at up to 3.6 MAF when assumed reductions to Mexico are included, *see* Table ES-2) as part of the post-2026 Operational Guidelines. The Lower Division States voluntarily proposed reductions of 1.25 MAF annually for a two-year period. But even the 2027–28 operational guidelines contemplate cuts to the Lower Division States' water far exceeding that. Reductions of the magnitude under consideration by the Department far exceed what the Lower Division States have offered and, if ever implemented, would inflict catastrophic harm on Arizona's citizens without *any* corresponding mandatory contribution from the Upper Division States. And the FEIS contemplates "potential additional reductions" for only the Lower Division States if Lake Mead is projected to fall below elevation 1,000 feet, with no stated limit. It bears repeating that the Law of the River prescribes a sequence that the operational sideboards ignore. Shortages may not be imposed on the Lower Basin to absorb a deficiency that exists because the Upper Division States have not met their delivery obligations or that releases from the UIUs could remedy. Before the Department asks Arizona's communities, farms, and industries to bear reductions of this magnitude, it must first employ the tools the Law of the River supplies—compliance with Article III of the Compact, and the storage releases that Section 602(a) directs.

***Sixth***, apart from being inconsistent with the Colorado River Compact and the Law of the River, the preferred alternative's operational principles and operational sideboards are too vague to provide meaningful direction for future agency action. The third principle, for example, would permit "temporary operational actions that are not otherwise provided for under the LROC" to "protect critical federal infrastructure," but the FEIS never defines those actions, never states what interval qualifies as "temporary," never identifies the "extraordinary circumstances" that would trigger them, and cites no authority for the departure. ES.2.2.2. Arizona cannot plan around "operational actions" that the Department declines even to describe. The fourth principle is similarly imprecise. It provides that, absent consensus, the Secretary will take "necessary management actions, consistent with applicable federal law." ES.2.2.2. But the FEIS nowhere states what the Department understands that law to require or what actions it anticipates taking. As such, Arizona is left with no guidance about the Department's future decision-making.

The operational sideboards suffer from the same defect as the operational principles: they announce thresholds and ranges without explaining how operations will be implemented consistently with the Law of the River, leaving water users to guess at the Department's future decision-making. The "Lower Basin Shortage Guidelines" authorize up to 3.0 MAF in annual reductions to the Lower Division States "to provide protection of critical infrastructure at Hoover Dam in dry hydrologic conditions." ES.2.2.3. But the FEIS does not explain how those potential reductions will remain consistent with the governing law, including the Colorado River Compact. It states only that the "allocation of shortages would be based on applicable law," failing to take a position on what the applicable law requires. ES.2.2.3.

And ***finally***, the FEIS does not satisfy the Department's NEPA and APA obligations because it fails to adequately address several important issues raised by Arizona's comments on the Draft EIS, including the Department's failure to analyze engineering measures at Glen Canyon Dam that would restore access to the storage stranded below the 3,500-foot protection elevation; reliance on outdated Upper Basin demand projections and depletion-schedule assumptions; and failure to assess the economic and national-security

consequences of the proposed reductions for Arizona's agricultural production, manufacturing, and municipal water users. *See Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Arizona remains committed to working constructively with the Department toward a path forward. We appreciate your consideration of these points as the Department prepares its Record of Decision.

Sincerely,

Thomas Buschatzke

Cc: David Palumbo, Deputy Commissioner