MORRISON LAW
Gregory H. Morrison (NV Bar No. 12454)
36 Stewart Street, Suite 204
Reno, NV 89501
Telephone: (775) 413-6022
greg@morrisonlawnevada.com

CENTRAL ARIZONA WATER
CONSERVATION DISTRICT
Jay M. Johnson (AZ Bar No. 015122)
*Pro Hac Vice Pending*
Gregory L. Adams (AZ Bar No. 024997)
*Pro Hac Vice Pending*
23636 North 7th Street
Phoenix, AZ 85024
Telephone: (623) 869-2124
jjohnson@cap-az.com
gadams@cap-az.com

SOMACH SIMMONS & DUNN
A Professional Corporation
Stuart L. Somach (CA Bar No. 90959)
*Pro Hac Vice Pending*
Brittany K. Johnson (CA Bar No. 282001)
*Pro Hac Vice Pending*
Theresa C. Barfield (CA Bar No. 185568)
*Pro Hac Vice Pending*
Yosef M. Negose (CA Bar No. 361755)
*Pro Hac Vice Pending*
Maximilian C. Bricker (CA Bar No. 350150)
*Pro Hac Vice Pending*
500 Capitol Mall, Suite 1000
Sacramento, CA 95814
Telephone: (916) 446-7979
ssomach@somachlaw.com
bjohnson@somachlaw.com
tbarfield@somachlaw.com
ynegose@somachlaw.com
mbricker@somachlaw.com

Attorneys for [Proposed] Plaintiff-Intervenor
CENTRAL ARIZONA WATER
CONSERVATION DISTRICT

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

STATE OF NEVADA, COLORADO RIVER COMMISSION OF NEVADA, and SOUTHERN NEVADA WATER AUTHORITY,

Plaintiffs,

vs.

DOUG BURGUM, in his official capacity as Secretary of the Department of the Interior, U.S. DEPARTMENT OF THE INTERIOR, a federal agency, U.S. BUREAU OF RECLAMATION, an agency within the U.S. Department of the Interior, and AUBREY BETTENCOURT, in her official capacity exercising the delegated authority of the Commissioner of the U.S. Bureau of Reclamation,

Defendants.

Case No. 2:26-cv-02665-GMN-NJK

**MOTION TO INTERVENE OF CENTRAL ARIZONA WATER CONSERVATION DISTRICT AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

Judge: Gloria M. Navarro
Magistrate Judge: Nancy J. Koppe

Action Filed: Aug. 24, 2026

## TABLE OF CONTENTS

Page


MOTION TO INTERVENE ........ 6

MEMORANDUM OF POINTS AND AUTHORITIES ........ 6

I. INTRODUCTION ........ 6

II. BACKGROUND ........ 7

A. CAWCD Delivers Colorado River Water to Central and Southern Arizona ........ 7

B. Federal Defendants Recently Adopted New Operating Guidelines for the Coordinated Operations of Lake Mead and Lake Powell ........ 9

III. ARGUMENT ........ 10

A. CAWCD Has a Right to Intervene ........ 10

1. CAWCD's Motion Is Timely ........ 11

2. CAWCD Has Significant Protectable Interests in the Subject Matter of this Action ........ 12

3. CAWCD's Interests Will Be Impaired By the Disposition of this Action ........ 13

4. No Party But CAWCD Can Adequately Protect CAWCD's Interests in this Case ........ 14

5. There Is Also Precedent for CAWCD's Intervention in Cases Involving Colorado River Operations ........ 16

B. Alternatively, the Court Should Allow CAWCD to Permissively Intervene ........ 17

IV. CONCLUSION ........ 19

CERTIFICATE OF SERVICE ........ 20

INDEX OF EXHIBITS ........ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003)........................................14

*Arizona v. California*,
373 U.S. 546 (1963)........................................6, 13, 15

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
54 F.4th 1078 (9th Cir. 2022)........................................12

*Cent. Ariz. Water Conservation Dist. v. United States*,
32 F. Supp. 2d 1117 (D. Ariz. 1998)........................................7, 9

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011)........................................11

*Ctr. for Envtl. Law & Policy v. U.S. Bureau of Reclamation*,
No. CV-09-160-RHW, 2010 U.S. Dist. LEXIS 153740
(E.D. Wash. Jan. 13, 2010)........................................12

*Freedom from Religion Found., Inc. v. Geithner*,
644 F.3d 836 (9th Cir. 2011)........................................17

*Grand Canyon Tr. v. U.S. Bureau of Reclamation*,
No. CV-07-8164 PCT-DGC, 2008 U.S. Dist. LEXIS 43528, at *7
(D. Ariz. June 3, 2008)........................................17

*Greene v. United States*,
996 F.2d 973 (9th Cir. 1993)........................................17

*Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*,
No. 1:19-cv-00451-CL, 2019 U.S. Dist. LEXIS 192741
(D. Or. Nov. 6, 2019)........................................11

*Laughlin River Tours, Inc. v. U.S. Bureau of Reclamation, Dep't of Interior*,
730 F. Supp. 1522 (D. Nev. 1989)........................................16

*Cal. ex rel. Lockyer v. U.S. Dep't of Agriculture*,
Nos. C05-03508 EDL, C05-04038 EDL, 2006 U.S. Dist. LEXIS 20147
(N.D. Cal. Mar. 31, 2006)........................................12

*California ex rel. Lockyer v. United States*,
450 F.3d 436, 441 (9th Cir. 2006)........................................12

*Nw. Forest Res. Council v. Glickman*,
82 F.3d 825 (9th Cir. 1996)........................................................................................17

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*,
960 F.3d 603 (9th Cir. 2020)........................................................................................10

*Sagebrush Rebellion, Inc. v. Watt*,
713 F.2d 525 (9th Cir. 1983)........................................................................................16

*San Luis & Delta-Mendota Water Auth. v. Haugrud*,
848 F.3d 1216 (9th Cir. 2017)......................................................................................12

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
52 F. Supp. 3d 1020 (E.D. Cal. 2014)..........................................................................12

*Save the Colo. v. U.S. Dep't of Interior*,
No. CV-19-08285-PCT-MTL, 2020 U.S. Dist. LEXIS 94012
(D. Ariz. May 29, 2020)...............................................................................................16

*Smith v. L.A. Unified Sch. Dist.*,
830 F.3d 843 (9th Cir. 2016)........................................................................................11

*Spangler v. Pasadena City Bd. of Educ.*,
552 F.2d 1326 (9th Cir. 1977)......................................................................................18

*Spiller v. Walker*,
No. A-98-CA-255-SS, 2002 U.S. Dist. LEXIS 13194
(W.D. Tex. July 19, 2002)............................................................................................12

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001)........................................................................................16

*U.S. Equal Emp. Opportunity Comm'n v. PRC Indus., Inc.*,
No. 3:23-cv-00135-LRH-CSD, 2023 U.S. Dist. LEXIS 110639
(D. Nev. June 27, 2023) ...............................................................................................11

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004)........................................................................................11

*United States v. City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002)........................................................................................17

*W. Watersheds Project v. Haaland*,
22 F.4th 828 (9th Cir. 2022).........................................................................................10

*Wilderness Soc'y v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011)..........................................................................11, 12, 13

**Federal Statutes**

5 U.S.C. §§ 701-706....................................................................................................17

28 U.S.C. § 1331 .......... 17

Arizona Water Settlements Act of 2004, Pub. L. No. 108-451, 118 Stat. 3478 .......... 7

Colorado River Basin Project Act, Pub. L. No. 90-537, 82 Stat. 885 (1968)
(codified at 43 U.S.C. §§ 1501-1556) .......... 6
§ 301(a) .......... 7
§ 301(b) ..........

**State Statutes**

Ariz. Rev. Stat. § 48-3713 (2026) .......... 7

1971 Ariz. Sess. Laws. 110 (ch. 50) .......... 7

**Rules**

Fed. R. Civ. P.
Rule 24(a) .......... 10, 14, 16
Rule 24(a)(2) .......... 6, 11
Rule 24(b)(1)(B) .......... 6, 10, 17

**Other Authorities**

7C Charles Alan Wright et al., Federal Practice & Procedure § 1917 (3d ed. 2010) .......... 17

**MOTION TO INTERVENE**

Central Arizona Water Conservation District (CAWCD) moves to intervene as a plaintiff in this action under Rule 24 of the Federal Rules of Civil Procedure. Intervention as of right is warranted because CAWCD's interests in challenging the federal agency actions at issue in this case will not be adequately represented by other plaintiffs and will be harmed without CAWCD's participation. *See* Fed. R. Civ. P. 24(a)(2). Alternatively, permissive intervention is warranted because CAWCD's claims share common issues of fact and law with the main action in this case. *See* Fed. R. Civ. P. 24(b)(1)(B).

This motion is based on: (1) the supporting Memorandum of Points and Authorities; (2) the Declaration of Patrick Dent (Dent Decl.); (3) CAWCD's Proposed Complaint in Intervention; and (4) a Proposed Order.

The existing parties to this case reserve their position on the motion. Proposed Plaintiff-Intervenor the State of Arizona, acting through the Director of the Arizona Department of Water Resources, does not oppose the motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

CAWCD seeks to intervene as a party plaintiff because the resolution of the underlying issues in this case will have lasting impacts on the Central Arizona Project (CAP) and its water supply. CAWCD has unique interests as the local agency responsible for operating and maintaining the CAP, which includes federal canal infrastructure that delivers Colorado River water across Arizona to municipalities, industrial water users, tribes, and agriculture. That water supply could be drastically reduced—in some conditions reduced to zero—based on the agency actions challenged in this case and the outcome of the legal challenges to those agency actions. CAWCD seeks leave to intervene to protect its interests and to ensure they are considered. Those interests will be impaired without CAWCD's participation.

## II. BACKGROUND

### A. CAWCD Delivers Colorado River Water to Central and Southern Arizona

The seminal case of *Arizona v. California*, 373 U.S. 546 (1963), confirmed Arizona's apportionment of 2.8 million acre-feet of water from the mainstream Colorado River. After the Supreme Court's decision, Congress enacted the Colorado River Basin Project Act, Pub. L. No. 90-537, 82 Stat. 885 (1968) (codified at 43 U.S.C. §§ 1501-1556). The Act authorized the Secretary of the Department of the Interior (Secretary) to construct the CAP for the "purposes of furnishing irrigation water and municipal water supplies to the water-deficient areas of Arizona." *Id.* § 301(a).

The CAP is a 336-mile canal, including a system of pumping plants, tunnels, check gates, and turnouts, that has a designed capacity to deliver 3,000 cubic feet per second of Colorado River water to the most populated regions in Arizona. Dent Decl. ¶ 6. The CAP's 24,000-square-mile service area includes approximately 6 million people – more than 80 percent of Arizona's population. *Id.* The CAP delivers water to users in three primary categories: municipal and industrial (M&I), agricultural, and tribal. There are approximately 55 CAP M&I subcontractors and 11 Arizona tribes with contracts with the United States. In addition, in years when there is water available to CAP in excess of the M&I subcontracts and tribal contracts, CAWCD may sell or use such excess water for any authorized purpose of the CAP, including a commitment through 2030 to deliver water to agricultural users pursuant to the Arizona Water Settlements Act of 2004, Pub. L. No. 108-451, 118 Stat. 3478 (AWSA). *Id.* ¶ 7.

CAWCD was formed in 1971 as a political subdivision in the State of Arizona to enter into a contract with the Secretary to carry out the provisions of the Reclamation Act of 1902 and the Colorado River Basin Project Act, to be the operating agent of the CAP, to enter into subcontracts with water users for the delivery of water through the CAP facilities, and to acquire a power supply for the operation of the CAP. *See* Ariz. Rev. Stat. § 48-3713 (2026); *see also* 1971 Ariz. Sess. Laws. 110 (ch. 50); Dent. Decl. ¶¶ 8, 12. CAWCD is the multi-county water conservation district authorized under Arizona state law to contract with the federal government for repayment of the non-federal share of CAP construction costs related to non-federal water

supply and commercial power, plus interest during construction. *See Cent. Ariz. Water Conservation Dist. v. United States*, 32 F. Supp. 2d 1117, 1122-23 (D. Ariz. 1998).

The United States and CAWCD entered into a Section 5 contract entitled "Contract for the Delivery of Water and Repayment of Costs of the Central Arizona Project," Contract No. 14-06-W-245, dated December 15, 1972 (Master Repayment Contract). The United States and CAWCD entered into Amendment No. 1 to the Master Repayment Contract on December 1, 1988, and Amendment No. 2 to the Master Repayment Contract on December 5, 2007. Dent. Decl. ¶ 9. The Master Repayment Contract contains the terms for delivery of Colorado River water and repayment and details CAWCD's operation and maintenance responsibilities for the federally owned project. *Id.* ¶¶ 9-10, 12 & Ex. B.

Under Article 8.7 of the Master Repayment Contract, the quantity of water available for delivery to CAWCD shall not exceed the 2.8 million acre-feet of water available to Arizona under its apportionment and Arizona's 1944 Section 5 Contract, after satisfaction of present perfected rights, and water delivery contracts between the United States and water users in Arizona as of September 30, 1968. Under Article 8.3(b) of the Master Repayment Contract, delivery of Colorado River water to CAWCD under this contract discharges the obligation of the United States to deliver water to the State of Arizona under its 1944 Section 5 Contract. *See also* section 7(l) of Arizona's 1944 Section 5 Contract. In other words, all water available to the State of Arizona from its Colorado River apportionment after satisfaction of pre-September 30, 1968 water rights and water delivery contracts may be diverted by the CAP. Dent. Decl. ¶ 10. Historically, under "normal" conditions, this amount of water is approximately 1.67 million acre-feet annually. *Id.*

The United States considers CAWCD's entitlement to Colorado River to be "fourth priority" relative to other Colorado River water users within Arizona. Dent. Decl. ¶ 11. This means that CAP's water supply faces reductions before there are any reductions to present perfected right holders in Arizona and holders of Section 5 contracts executed before September 30, 1968. *Id.* Additionally, based on the United States' interpretation of section 301(b) of the Colorado River Basin Project Act in the challenged agency actions, CAP's

water supply will be reduced before there are reductions in California. *Id.* Extreme shortages in the Lower Basin due to dry hydrology, low reservoir storage, and management decisions by Reclamation put CAWCD in a unique position relative to other water users in Arizona that assert a higher priority over CAP's water supply, and in a unique position relative to other water users in the Lower Basin that also assert a higher priority over CAP's water supply.

The federal government constructed the CAP between 1973 and 1993 at a cost of more than $4 billion. Disputes arose regarding CAWCD's repayment obligation, and CAWCD brought suit against the United States to obtain a judicial determination of its repayment obligation. CAWCD prevailed in the first phase of trial in that litigation, ruling in favor of CAWCD's interpretation of the repayment ceiling in the 1988 amendment to the repayment contract. *Cent. Ariz. Water Conservation Dist.*, 32 F. Supp. 2d at 1143-44. As a settlement of the remaining phases of that litigation, CAWCD and the United States stipulated that CAWCD owed the United States $1.646 billion, plus interest. This settlement ultimately led to the enactment of the AWSA. Payments started in 1994 and are scheduled to be completed in 2045. Dent. Decl. ¶ 12. CAWCD's subcontracts generate revenue that CAWCD uses to pay down its debt to the federal government under the Master Repayment Contract. Revenues from property taxes and other supplemental revenues contribute as well. *Id.*

Additionally, 22 of the 30 federally recognized tribes in the Colorado River Basin are situated in Arizona. Eleven of these tribes have entitlements to CAP water through congressionally approved water right settlement agreements or water delivery contracts for CAP allocations. Roughly 45 percent of the CAP water supply is or will be allocated to Arizona Indian tribes. Dent Decl. ¶ 13. CAWCD receives compensation for operating and maintenance costs associated with delivery of CAP water to tribes. *Id.*

**B. Federal Defendants Recently Adopted New Operating Guidelines for the Coordinated Operations of Lake Mead and Lake Powell**

Defendants Secretary of the U.S. Department of the Interior, the U.S. Department of the Interior, the U.S. Bureau of Reclamation, and Aubrey Bettencourt in her official capacity

exercising the delegated authority of the Commissioner of the Bureau of Reclamation (collectively "Federal Defendants") recently published the following documents:

1. Final Environmental Impact Statement for the Post-2026 Operational Guidelines and Strategies for Lake Powell and Lake Mead (July 2026) (Final EIS);
2. August 21, 2026 Record of Decision on the "Decision Framework for Colorado River Guidelines: Coordinated Operations of Lake Powell and Lake Mead (2027-2036)" (ROD);
3. "Operating Guidelines, Colorado River Guidelines for Coordinated Operations of Lake Powell and Lake Mead, Operating Years 2027 and 2028" (August 2026) (2027-2028 Operating Guidelines).

Under the ROD and 2027-2028 Operating Guidelines, Federal Defendants will determine the operational parameters for Lake Powell and Lake Mead, including the level of shortage that Federal Defendants will impose on the Lower Basin in the upcoming water years. Dent Decl. ¶¶ 18-19. The Secretary's shortage declaration and allocation of water among the Lower Basin States will impact the amount of water that is available for CAWCD to divert from the Colorado River and deliver to its subcontractors and to the United States' tribal contractors. *Id.* The Final EIS, ROD, and 2027-2028 Operating Guidelines are challenged in this action by Plaintiffs State of Nevada, Colorado River Commission of Nevada, and the Southern Nevada Water Authority (Nevada).

## III. ARGUMENT

Rule 24 of the Federal Rules of Civil Procedure sets forth the requirements for intervention in federal actions. Under Rule 24(a), CAWCD is entitled to intervene as a matter of right to protect its interests. Alternatively, if the Court determines that CAWCD does not have a right to intervene, the Court should grant permissive intervention pursuant to Rule 24(b)(1)(B).

### A. CAWCD Has a Right to Intervene

Under the Ninth Circuit's interpretation and application of Federal Rule of Civil Procedure 24(a):

> [A] nonparty is entitled to intervention as of right when it "(i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties."

*W. Watersheds Project v. Haaland,* 22 F.4th 828, 835 (9th Cir. 2022) (quoting *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland,* 960 F.3d 603, 620 (9th Cir. 2020)). When considering whether these elements are met, courts consider "practical and equitable considerations and construe [Rule 24(a)(2)] broadly in favor of proposed intervenors . . . because a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (internal quotation marks and citations omitted).

CAWCD qualifies to intervene under these standards.

**1. CAWCD's Motion Is Timely**

In the Ninth Circuit, timeliness depends on "three primary factors: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.' " *Smith v. L.A. Unified Sch. Dist*., 830 F.3d 843, 854 (9th Cir. 2016) (quoting *United States v. Alisal Water Corp*., 370 F.3d 915, 921 (9th Cir. 2004)). Here, the complaint was filed on or about August 24, 2026 (Nevada Complaint). Federal Defendants have not yet filed a responsive pleading, and there have been no substantive proceedings in the litigation. CAWCD's motion is therefore timely. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (motion timely when filed "less than three months after the complaint was filed and less than two weeks after the Forest Service filed its answer to the complaint"); *U.S. Equal Emp. Opportunity Comm'n v. PRC Indus., Inc.*, No. 3:23-cv-00135-LRH-CSD, 2023 U.S. Dist. LEXIS 110639, at *4 (D. Nev. June 27, 2023) (unopposed intervention motion was timely where "no significant motion practice . . . occurred" after answer was filed); *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, No. 1:19-cv-00451-CL, 2019 U.S. Dist. LEXIS 192741, at *4 (D. Or. Nov. 6, 2019) (motions to intervene were timely where one was filed shortly before the defendants filed answers to an amended complaint, and one was filed shortly after).

**2. CAWCD Has Significant Protectable Interests in the Subject Matter of this Action**

An intervenor must "claim[ ] an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). The asserted interest must be "protectable under some law" and there must be "a relationship between [the legally protected] interest and the claims at issue." *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.,* 54 F.4th 1078, 1088 (9th Cir. 2022) (citing *Wilderness Soc'y,* 630 F.3d at 1179). A prospective intervenor "generally demonstrate[s] a sufficient interest for intervention of right . . . if 'it will suffer a practical impairment of its interests as a result of the pending litigation.' " *Wilderness Soc'y,* 630 F.3d at 1180-81 (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006).

Interests that have supported intervention in NEPA cases include: (1) interests in delivering water and fulfilling repayment obligations to the United States; (2) interests in protecting water resources; and (3) interests in a pipeline that runs through a city and in managing water over which that pipeline travels.[1] CAWCD has similar interests here.

CAWCD delivers water to its subcontractors and to the United States' tribal contractors. Dent Decl. ¶¶ 7, 13. CAWCD is responsible for repayment contract obligations to the United States. *Id.* ¶¶ 9, 12. CAWCD must secure a reliable water supply for the population CAWCD serves, including Arizona Tribes. *Id.* ¶ 16. These are all significant interests that support CAWCD's intervention in this case.

CAWCD has a significant interest in judicial enforcement of NEPA procedures under which the Federal Defendants must consider and document alternatives to depleting the CAP system's water supplies. *See San Luis & Delta-Mendota Water Auth. v. Jewell*, 52 F. Supp. 3d

[1] *Ctr. for Envtl. Law & Policy v. U.S. Bureau of Reclamation*, No. CV-09-160-RHW, 2010 U.S. Dist. LEXIS 153740, at *6 (E.D. Wash. Jan. 13, 2010) (irrigation district's interests in delivering the water to landowners within its boundaries and fulfilling its repayment contract obligations to the United States supported intervention as a defendant in NEPA case); *Cal. ex rel. Lockyer v. U.S. Dep't of Agriculture*, Nos. C05-03508 EDL, C05-04038 EDL, 2006 U.S. Dist. LEXIS 20147, at *8 (N.D. Cal. Mar. 31, 2006) (protection of water resources was a significantly protectable interest that supported intervention of right as a plaintiff in a NEPA case); *Spiller v. Walker*, No. A-98-CA-255-SS, 2002 U.S. Dist. LEXIS 13194, at *5-6 (W.D. Tex. July 19, 2002) (allowing intervention when the relevant pipeline runs through the intervening city and the intervenor agency manages a large portion of the water supply over which the pipeline travels).

1020, 1036, 1040-41 (E.D. Cal. 2014), rev'd in part on other grounds sub nom. *San Luis & Delta-Mendota Water Auth. v. Haugrud*, 848 F.3d 1216 (9th Cir. 2017). CAWCD sought to vindicate such interests when it submitted detailed comments during the NEPA process underlying the Federal Defendants' actions at issue in this case and will continue do so through participation in this litigation. Dent. Decl. ¶ 20. There is no reasonable dispute here that CAWCD has significant interests in this action.

Moreover, Nevada put CAWCD's significant interests at issue in their Nevada Complaint, which discusses the CAP and the legislation through which Congress authorized the federal government to construct the CAP. *See* Compl. ¶ 23, Dkt. No. 1. The Nevada Complaint alleges that Congress "shift[ed] California's responsibility for shortages to Arizona until the Central Arizona Project flows are reduced to zero." *Id.* ¶ 80. The Nevada Complaint includes discussion of compacts, treaties, federal laws, court decisions and decrees, contracts, and regulatory guidelines under which the Colorado River is managed and operated. *Id.* ¶¶ 16-26. This discussion bears directly on language in CAWCD's Master Repayment Contract with the United States, under which CAWCD pays millions of dollars per year to the United States. *See* Dent Decl. ¶¶ 12, 17. The Nevada Complaint also seeks a broad injunction halting implementation of the final agency actions, including by non-parties acting in concert or participation with the Federal Defendants. Compl. 2, Dkt. No. 1. Such a broad injunction would impact CAWCD's operations. *See* Dent Decl. ¶ 23.

**3. CAWCD's Interests Will Be Impaired By the Disposition of this Action**

CAWCD will "suffer a practical impairment of its interests as a result of the pending litigation." *See Wilderness Soc'y*, 630 F.3d at 1180-81 (internal quotation marks and citation omitted). CAWCD has a unique position as a fourth priority entitlement holder in Arizona, and as the subject of statutory language in the Colorado River Basin Project Act on how the *Arizona v. California* decree should be administered relative to the CAP's water supply and other Lower Basin water users. Dent Decl. ¶ 11. In extreme shortages due to dry hydrology, low reservoir storage, and management decisions by Reclamation, CAP's water supply faces reductions before any reductions to present perfected right holders in Arizona and holders of Section 5 contracts

executed before September 30, 1968. CAWCD is also subject to arguments by other Lower Basin water users that it should be reduced first before any reductions in California. *Id.*

Thus, if the Court grants Nevada all the relief the Nevada Complaint seeks, then, based on CAWCD's unique priority position, the broadly worded injunction would affect CAWCD's diversion and delivery of Colorado River water to its subcontractors and the United States' tribal contractors. *See* Dent Decl. ¶ 23. On the other hand, if the Court denies the relief the Nevada Complaint seeks, the Federal Defendants' actions will stand, and the CAP's water supply will be reduced significantly. This Court will also confront and rule on competing interpretations of the "Law of the River" that will likely complicate, undermine, or otherwise impair CAWCD's operations. CAWCD easily satisfies this factor for intervention as of right under Federal Rule of Civil Procedure 24(a).

**4. No Party But CAWCD Can Adequately Protect CAWCD's Interests in this Case**

The Ninth Circuit considers three factors that focus on whether the proposed intervenor and the existing parties will make duplicative arguments:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether [a] present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). "The burden on proposed intervenors in showing inadequate representation is minimal, and would be satisfied if they could demonstrate that representation of their interests 'may be' inadequate." *Id.* (citation omitted).

Here, Nevada alleges interests based on Nevada's apportionment of Colorado River water and the impacts of proposed Colorado River operations and associated shortages on southern Nevada, including the environmental impacts and economic losses in the Las Vegas area. Compl. ¶¶ 3, 62-64, Dkt. No. 1. Nevada also alleges that the Federal Defendants erroneously interpreted the provisions of the Colorado River Basin Project Act and how

shortages are shared between Nevada and Arizona, and specifically CAWCD as a water user within Arizona. *Id.* ¶ 80.

Necessarily, CAWCD's interest in protecting its entitlement to Colorado River water, which derives from Arizona's apportionment, is distinct from Nevada's interest in protecting Nevada's apportionment under the new operating guidelines, and the arguments presented by Nevada and CAWCD will be different. This is evidenced by the different causes of action included in CAWCD's proposed Complaint in Intervention and the relief requested. The Nevada Complaint does not present these same issues, and CAWCD has no reason to believe that Nevada is willing or able to present them.

Additionally, the State of Arizona, acting through the Director of the Arizona Department of Water Resources (Arizona), recently moved to intervene as a plaintiff in this action. Dkt. Nos. 15 to 15-15. The Court has not yet acted on Arizona's motion. Arizona has a significant protectable interest in this action based on its rights to water from the Colorado River under the Compact and other federal laws. Mot. to Intervene 9-10, Dkt. No. 15. CAWCD has a separate interest in this action from the state and other water users based on its own Master Repayment Contract with the United States and its right to delivery of Colorado River water under that contract. CAWCD is a fourth priority entitlement holder in Arizona and is the subject of statutory language in the Colorado River Basin Project Act on how the *Arizona v. California* decree should be administered relative to the CAP's water supply and other Lower Basin water users. CAWCD should be permitted to represent its specific and separate interests based on this priority status.

CAWCD also has a separate interest in operating and maintaining the CAP system and delivering Colorado River water to its subcontractors and the United States' tribal contractors, and how shortage conditions will affect the CAP's deliveries and its repayment obligation to the United States. Dent Decl. ¶¶ 15-16. Other parties will not "undoubtedly" make arguments based on CAWCD's narrow and parochial interests that belong to CAWCD alone. CAWCD's proposed Complaint in Intervention highlights how depriving CAWCD of many tens or hundreds of billions of gallons of water per year foreseeably will cause: (1) millions of dollars of

damage to the CAP's infrastructure; (2) steep changes in biological conditions throughout the CAP's service area; (3) degradation of the quantity and quality of water available to the population CAWCD serves, including Arizona Indian Tribes; (4) trillions of dollars of economic damage; and (5) circumstances under which Arizona farmers will need to fallow their lands and Arizona communities will need to haul water.

CAWCD's perspective is based on its operation and maintenance responsibility for the 336-mile canal delivering water across Arizona, its delivery obligation to eleven tribal contractors and approximately 55 M&I subcontractors, and its repayment obligation to the United States. CAWCD's position at the intersection of the federal government, the state of Arizona, municipalities, irrigation districts, and industrial water users in Arizona and Arizona Tribes is unique and favors intervention as of right. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 824 (9th Cir. 2001) (difference in interests between government defendants and proposed intervenor trade associations made it likely that intervenors would advance different arguments and created "sufficient doubt about the adequacy of representation to warrant intervention"); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (granting motion to intervene where "the intervenor offers a perspective which differs materially from that of the present parties to this litigation").

The Court, therefore, should grant CAWCD's Motion to Intervene as of right under Federal Rule of Civil Procedure 24(a).

**5. There Is Also Precedent for CAWCD's Intervention in Cases Involving Colorado River Operations**

Given CAWCD's significant interest in the coordinated operations of Lake Powell and Lake Mead, CAWCD has previously sought and been granted intervention in litigation affecting the operating guidelines for these Colorado River reservoirs. *See, e.g., Laughlin River Tours, Inc. v. U.S. Bureau of Reclamation, Dep't of Interior*, 730 F. Supp. 1522, 1523 (D. Nev. 1989) (APA action seeking release of Colorado River Water from dams) ("the court granted the motions of the defendants, Department of Water and Power of the City of Los Angeles, the State of Arizona and its Arizona Power Authority, the Department of Water Resources, Central

Arizona Water Conservation District, the State of California, and the Metropolitan Water District of Southern California, to intervene"); *see also Save the Colo. v. U.S. Dep't of Interior*, No. CV-19-08285-PCT-MTL, 2020 U.S. Dist. LEXIS 94012, at *4 (D. Ariz. May 29, 2020) (permitting CAWCD, the Metropolitan Water District of Southern California, and the Southern Nevada Water Authority to intervene in action with potential to affect the flow of Colorado River water); *Grand Canyon Tr. v. U.S. Bureau of Reclamation*, No. CV-07-8164 PCT-DGC, 2008 U.S. Dist. LEXIS 43528, at *7 (D. Ariz. June 3, 2008) (over plaintiff's objection, permitting intervention by Arizona, other states, CAWCD, and other political subdivisions into litigation involving the Humpback Chub and releases of water into the Colorado River). This case law further supports CAWCD's intervention in this case.

**B. Alternatively, the Court Should Allow CAWCD to Permissively Intervene.**

Alternatively, CAWCD satisfies the generous standard for permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B). Under that standard, "a court may grant permissive intervention where the applicant for intervention shows: (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996)).

First, "the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). Here, the Nevada Complaint "is brought pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 5 U.S.C. §§ 701-706 (APA)." Compl. ¶ 5, Dkt. No. 1. CAWCD's claims as a proposed intervenor do not raise any non-APA or non-federal question statute claims. Thus, no issue arises under the "independent grounds for jurisdiction" factor. 7C Charles Alan Wright et al., Federal Practice & Procedure § 1917 (3d ed. 2010) ("In federal-question cases there should be no problem of jurisdiction with regard to an intervening defendant nor is there any problem

when one seeking to intervene as a plaintiff relies on the same federal statute as does the original plaintiff").

Second, the timeliness factor is satisfied for the same reasons stated above. CAWCD moved to intervene at an early stage in this litigation. *See* section III.A.1, *ante*.

Third, a common question of law or fact arises when a prospective intervenor's claims "relate to the subject matter of the action[.]" *Greene v. United States,* 996 F.2d 973, 978 (9th Cir. 1993). Here, CAWCD's claims relate to the subject matter of the action – the Federal Defendants' adoption of the Final EIS, the ROD, and the 2027-2028 Operating Guidelines. Thus, this factor favors permissive intervention.

With these three factors met, the Court has broad discretion to consider additional factors in deciding whether to permit CAWCD to intervene in this case. These factors include, but are not limited to, the nature and extent of CAWCD's interest, and whether CAWCD will significantly contribute to full development of the factual and legal issues in this case. *See Spangler v. Pasadena City Bd. of Educ.,* 552 F.2d 1326, 1329 (9th Cir. 1977) (identifying nonexclusive discretionary factors that the district court may consider when deciding whether to grant permissive intervention). As explained above, CAWCD has significant interests related to the subject matter of this case, its motion is timely, its intervention will not prejudice other parties, and CAWCD alone can represent its narrow and unique interest in managing Colorado River water within the CAP's service area. Additionally, CAWCD is eager to contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented. The Court therefore should grant CAWCD permissive intervention if the Court denies CAWCD intervention as of right.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant CAWCD's motion to intervene as of right, or alternatively, grant CAWCD's permissive intervention in this case.

Respectfully submitted,

MORRISON LAW

DATED: October 27, 2026 By ______________________

Gregory H. Morrison
Attorneys for [Proposed] Plaintiff-Intervenor
CENTRAL ARIZONA WATER
CONSERVATION DISTRICT

CENTRAL ARIZONA WATER
CONSERVATION DISTRICT

DATED: October 27, 2026 By ______________________

Jay M. Johnson
Gregory L. Adams
Attorneys for [Proposed] Plaintiff-Intervenor
CENTRAL ARIZONA WATER
CONSERVATION DISTRICT

SOMACH SIMMONS & DUNN
A Professional Corporation

DATED: October 27, 2026 By ______________________

Stuart L. Somach
Brittany K. Johnson
Theresa C. Barfield
Yosef M. Negose
Maximilian C. Bricker
Attorneys for [Proposed] Plaintiff-Intervenor
CENTRAL ARIZONA WATER
CONSERVATION DISTRICT

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the Motion to Intervene of Central Arizona Water Conservation District and Supporting Memorandum of Points and Authorities to be electronically filed and served on all counsel of record using the Court's CM/ECF system.

DATED: October 27, 2026

GREGORY H. MORRISON

**INDEX OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | Declaration of Patrick Dent in Support of Central Arizona Water Conservation District's Motion to Intervene |
| 2 | [Proposed] Order Granting Central Arizona Water Conservation District's Motion to Intervene |
| 3 | Complaint in Intervention for Declaratory and Injunctive Relief |